PUBLIC

**CASE NO. 22-4689**

IN THE

# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

———————————

UNITED STATES OF AMERICA,

*Plaintiff - Appellee,*

v.

DIANA TOEBBE,

*Defendant - Appellant.*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT MARTINSBURG

———————————

**OPENING BRIEF OF APPELLANT - PUBLIC (Redacted)**

———————————

Barry P. Beck, Esq.
POWER, BECK &
MATZUREFF
308 West Burke Street
Martinsburg, WV 25401
304-264-8870
bpbeck@frontier.com

Jessica N. Carmichael
CARMICHAEL ELLIS &
BROCK, PLLC
108 North Alfred Street, 1st Floor
Alexandria, VA 22314
703-684-7908
jessica@carmichaellegal.com

*Counsel for Appellant*

# TABLE OF CONTENTS

<u>Page</u>

TABLE OF AUTHORITIES ............................................................. iv

INTRODUCTION .......................................................................... 1

STATEMENT OF APPELLATE JURISDICTION ................................... 2

STATEMENT OF THE ISSUES ....................................................... 2

STATEMENT OF THE CASE ......................................................... 2

STATEMENT OF FACTS .............................................................. 3

    A.   Mrs. Toebbe's conduct .................................................... 3

    B.   The first plea agreement ................................................. 6

    C.   The second plea agreement and the government's sentencing recommendation ........................................... 7

    D.   The district court's sentence .......................................... 8

    E.   The district court's abandonment of judicial neutrality and findings based on materially false theories ................................ 11

           █████████████████████████████████ .................... 12

          b.   Developing and then relying on a theoretical and baseless "Plan C" ................................................. 15

          c.   Speculating that Mrs. Toebbe actually created the criminal scheme contrary to the agreed upon and well-established facts ................................................. 17

d.   Failing to account for unwarranted sentencing disparities ................................................................. 18

e.   Employing inapt analogies ...................................................... 19

f.   Denying acceptance of responsibility ..................................... 19

SUMMARY OF THE ARGUMENT ......................................................... 20

ARGUMENT ............................................................................................ 23

I.   Mrs. Toebbe did not waive her right to appeal these matters ................................................................................... 23

II.   Mrs. Toebbe did not receive a fair sentencing process because district court sentenced Mrs. Toebbe based on materially false theories, abandoned judicial neutrality, and repeatedly violated the principle of party presentation ....................................................................... 28

a.   The district court improperly based Mrs. Toebbe's sentence on inaccurate information ................................... 33

████████████████████████████████████████ .......................... 38

c.   The district court improperly denied Mrs. Toebbe acceptance of responsibility ............................................... 42

d.   The district court improperly ignored sentencing disparities ................................................................. 44

III.   To uphold Mrs. Toebbe's sentence would be miscarriage of justice ...................................................................... 45

IV.   Mrs. Toebbe's case should be remanded to a different district judge ...................................................................... 47

V.    Mrs. Toebbe's sentence violated the Eighth Amendment ........ 49

CONCLUSION ........................................................................ 52

REQUEST FOR ORAL ARGUMENT ..................................... 53

CERTIFICATE OF COMPLIANCE ...................................... 54

CERTIFICATE OF SERVICE ................................................ 55

## TABLE OF AUTHORITIES

### Cases

*Anderson v. Sheppard*,
856 F.2d 741 (6th Cir. 1988) ...................................................... 32-33

*Austin v. United States*,
No. l:09CR261-2, 2014 U.S. Dist. LEXIS 182547
(M.D.N.C. July 9, 2014) ............................................................. 38-39

*Castro v. United States*,
540 U.S. 375, 124 S. Ct. 786, 157 L. Ed. 2d 778 (2003) .................................. 31

*Cullen v. United States*,
194 F.3d 401 (2d Cir. 1999) ............................................................ 48

*De Belbruno v. Ashcroft*,
362 F.3d 272 (4th Cir. 2004) ........................................................... 28

*Gardner v. Florida*,
430 U.S. 349 (1977) ................................................................... 27

*Graham v. Florida*,
560 U.S. 48 (2010) ................................................................ 50, 51

*Greenlaw v. United States*,
554 U.S. 237 (2008) ............................................................ 30, 31, 40

*Harmelin v. Michigan*,
501 U.S. 957 (1991) ................................................................... 51

*Hartmann v. Prudential Ins. Co. of Am.*,
9 F.3d 1207 (7th Cir. 1993) ............................................................ 31

*Hill v. Corizon Health, Inc.*,
712 F. App'x 811 (10th Cir. 2017) ..................................................... 32

*In re A&D Ints., Inc.*,
33 F.4th 254 (5th Cir. 2022) ........................................................... 32

*In re Murchison*,
349 U.S. 133 (1955) ................................................................ 29, 33

*Kodeck v. Cregger*,
No. CCB-17-2557, 2018 U.S. Dist. LEXIS 110729 (D. Md. July 2, 2018) ..... 48

*Liteky v. United States*,
510 U.S. 540 (1994) ......................................................................................... 47

*Livingston v. Annucci*,
No. 9:18-cv-00803-JKS, 2021 U.S. Dist. LEXIS 53129
(N.D.N.Y. Mar. 22, 2021) ................................................................................ 33

*Solem v. Helm*,
463 U.S. 277 (1983) ......................................................................................... 50

*Townsend v. Burke*,
334 U.S. 736 (1948) ......................................................................................... 33

*United States v. Aberant*,
No. 19-4786, 2021 U.S. App. LEXIS 34308 (4th Cir. Nov. 18, 2021) ............ 48

*United States v. Adams*,
814 F.3d 178 (4th Cir. 2016) ........................................................................... 23

*United States v. Aldeen*,
792 F.3d 247 (2d Cir. 2015) ............................................................................ 52

*United States v. Archie*,
771 F.3d 217 (4th Cir. 2014) ........................................................................... 24

*United States v. Attar*,
38 F.3d 727 (4th Cir. 1994) ................................................................... 24, 26-27

*United States v. Blick*,
408 F.3d 162 (4th Cir. 2005) ........................................................................... 27

*United States v. Boutcher*,
998 F.3d 603 (4th Cir. 2021) ........................................................................... 23

*United States v. Brice*,
565 F.2d 336 (5th Cir. 1977) ........................................................................... 33

*United States v. Burt*,
734 F. App'x 881 (4th Cir. 2018) ............................................................... 24-25

*United States v. Bushert*,
997 F.2d 1343 (11th Cir. 1993) ....................................................................... 24

*United States v. Campo*,
   140 F.3d 415 (2d Cir. 1998) ................................................................. 49

*United States v. Cobbins*,
   749 F. Supp. 1450 (E.D. La. 1990) ...................................................... 39

*United States v. Cobler*,
   748 F.3d 570 (4th Cir. 2014) ......................................................... 50, 51

*United States v. Cossey*,
   632 F.3d 82 (2d Cir. 2011) .................................................. 35, 38, 49

*United States v. England*,
   555 F.3d 616 (7th Cir. 2009) ......................................... 34-35, 37

*United States v. ex rel Welch v. Lane*,
   738 F.2d 863 (7th Cir. 1984) .............................................. 34

*United States v. Gregory*,
   315 F.3d 637 (6th Cir. 2003) ......................................... 43-44

*United States v. Hall*,
   965 F.3d 1281 (11th Cir. 2020) ..................................... 28-29

*United States v. Hickman*,
   592 F.2d 931 (6th Cir. 1979) ............................................. 33

*United States v. Hollins*,
   498 F.3d 622 (7th Cir. 2007) ............................................. 28

*United States v. Hopper*,
   27 F.3d 378 (9th Cir. 1994) ............................................... 44

*United States v. Howle*,
   166 F.3d 1166 (11th Cir. 1999) ........................................ 24

*United States v. Johnson*,
   410 F.3d 137 (4th Cir. 2005) ..................................... 23-24

*United States v. Juwa*,
   508 F.3d 694 (2d Cir. 2007) ............................................. 35

*United States v. Leung*,
   40 F.3d 577 (2d Cir. 1994) ......................................... 48-49

vi

*United States v. Marin*,
    961 F.2d 493 (4th Cir. 1992) ............................................................ 23

*United States v. Marsh*,
    944 F.3d 524 (4th Cir. 2019) ............................................................ 24

*United States v. Martinovich*,
    810 F.3d 232 (4th Cir. 2016) ...................................................... 29-30

*United States v. Mason*,
    495 F. App'x 373 (4th Cir. 2012) .................................................... 50

*United States v. McReynolds*,
    964 F.3d 555 (6th Cir. 2020) ............................................................ 31

*United States v. Mejia*,
    325 F. App'x 146 (3d Cir. 2009) ..................................................... 50

*United States v. Miles*,
    10 F.3d 1135 (5th Cir. 1993) ............................................................ 32

*United States v. Mino*,
    697 F. App'x 973 (11th Cir. 2017) .................................................. 50

*United States v. Moriarty*,
    429 F.3d 1012 (11th Cir. 2005) ....................................................... 45

*United States v. Mutschler*,
    152 F. Supp. 3d 1332 (W.D. Wash. 2016) ...................................... 26

*United States v. Perez*,
    46 F. Supp. 2d 59 (D. Mass. 1999) ................................................. 26

*United States v. Pulley*,
    601 F.3d 660 (7th Cir. 2010) ............................................................ 34

*United States v. Raynor*,
    989 F. Supp. 43 (D.D.C. 1997) ....................................................... 26

*United States v. Rosa*,
    123 F.3d 94 (2d Cir. 1997) ........................................................ 25, 46

*United States v. Said*,
    798 F.3d 182 (4th Cir. 2015) ............................................................ 49

*United States v. Samuels*,
   808 F.2d 1298 (8th Cir. 1987) ........................................................ 31

*United States v. Servance*,
   394 F.3d 222 (4th Cir. 2005) ......................................................... 41

*United States v. Sineneng-Smith*,
   140 S. Ct. 1575 (2020) ...................................................... 30, 31, 40

*United States v. Singh*,
   877 F.3d 107 (2d Cir. 2017) ......................................................... 52

*United States v. Stein*,
   544 F.2d 96 (2d Cir. 1976) .......................................................... 49

*United States v. Sullivan*,
   498 F. App'x 831 (10th Cir. 2012) ................................................. 50

*United States v. Torres-Teyer*,
   322 F. Supp. 2d 359 (S.D.N.Y. 2004) .......................................... 43

*United States v. Townsend*,
   No. 19-20840, 2021 U.S. Dist. LEXIS 37403 (E.D. Mich. Mar. 1, 2021) ....... 26

*United States v. Tucker*,
   404 U.S. 443 (1972) .................................................................... 33

*United States v. Ware*,
   623 F. App'x 119 (4th Cir. 2015) .................................................. 25

*United States v. Wise*,
   No. 12-cr-00642-EMC-1, 2016 U.S. Dist. LEXIS 176008
   (N.D. Cal. Dec. 16, 2016) ............................................................ 39

*United States v. Wright*,
   59 F.3d 168 (4th Cir. 1995) .......................................................... 45

*United States v. Zuk*,
   874 F.3d 398 (4th Cir. 2017) .................................................... 44, 45

*Weems v. United States*,
   217 U.S. 349 (1910) .................................................................... 50

## Statutes

18 U.S.C. § 2 ............................................................................................. 3

18 U.S.C. § 3231 ...................................................................................... 2

28 U.S.C. § 1291 ...................................................................................... 2

28 U.S.C. § 2106 ..................................................................................... 47

42 U.S.C. § 2274 .................................................................................. 2, 3

## Other Authorities

U.S. Const. amend. VIII ........................................................................ 50

U.S.S.G. § 5K1.1 .................................................................................... 39

## INTRODUCTION

On the day of her sentencing, Diana Toebbe, accomplice to espionage and government cooperator, walked into court with a joint recommendation of 3 years incarceration. She walked out of court having been sentenced to almost 22 years in prison. This sentence was roughly 3 years greater than her co-defendant husband, the principal offender, (who received a little over 19 years) and 13 years above the low-end of the guidelines contemplated in the binding plea agreement.

While Mrs. Toebbe signed a plea agreement waiving her right to appeal, she did not, and cannot, knowingly and voluntarily waive her right to a fair and adequate sentencing process with a neutral arbiter based on facts. In this case, the district court abandon its neutrality, sentenced Mrs. Toebbe based on materially false speculations, and otherwise inserted itself into the adversarial system to such a degree that Mrs. Toebbe was denied a fair sentencing process. Mrs. Toebbe's due process rights were violated; it would be manifestly unjust to enforce the appellate waiver in this case and to uphold the sentence, which was also in violation of the Eighth Amendment. Mrs. Toebbe

respectfully requests that this Honorable Court vacate her sentence and

remand for resentencing with a different district court judge.

## STATEMENT OF APPELLATE JURISDICTION

Diana Toebbe was charged with offenses against the United

States thereby conferring jurisdiction pursuant to 18 U.S.C. § 3231.

J.A. 17.  On November 17, 2022, the District Court entered final

judgment. J.A. 346. Appellant filed a timely notice of appeal on

November 29, 2022. J.A. 354. This Court has appellate jurisdiction

pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

I.    Did Mrs. Toebbe waive her right to this appeal?

II.   Did the district court violate Mrs. Toebbe's right to a fair
      sentencing process?

III.  Would it be manifestly unjust to uphold the sentence?

IV.   Should Mrs. Toebbe's case be remanded to a different district
      judge?

V.    Does Mrs. Toebbe's sentence violate the Eighth Amendment?

## STATEMENT OF THE CASE

Diana Toebbe was charged with: (1) Conspiracy to Communicate

Restricted Data in violation of 42 U.S.C. § 2274(a); (2) aiding and

2

abetting the Communication of Restricted Data in violation of 42 U.S.C.

§ 2274(a) and 18 U.S.C. § 2(a); and (3) aiding and abetting the

Communication of Restricted Data in violation of 42 U.S.C. § 2274(a)

and 18 U.S.C. § 2(a). J.A. 17-27.

Mrs. Toebbe pled guilty twice. The district court rejected the first

plea agreement, in which the parties agreed that a sentence of not more

than thirty-six months imprisonment was appropriate and bound the

district court to that term. J.A. 161-199. The district court accepted the

second plea agreement that outlined a binding term of the low end of

the guidelines range, which the plea agreement and 5K motion

calculated at 108 months incarceration. J.A. 200-345, J.A. 417-429. The

district court sentenced Mrs. Toebbe to 262 months imprisonment. J.A.

346.

## STATEMENT OF FACTS

### A. Mrs. Toebbe's conduct

Before this all began, Diana Toebbe was a high school humanities

teacher in Annapolis, Maryland, living a quiet suburban life with her

husband, a civilian nuclear engineer for the Navy, and their two school-

aged children. Mrs. Toebbe suffered from severe, well-documented,

3

longstanding depression which was exacerbated by external pressures she faced around the time of her offense. When her husband approached her about an idea for stealing classified information from his office and selling it, allowing them to live abroad, Mrs. Toebbe expressed initial skepticism, but did not dissuade him. Eventually, she became an accomplice.

Over the course of several months, Mr. Toebbe stole classified documents from his office, scanned them, put them on SD cards, packaged them, created email accounts, created cover stories, created crypto currency wallets, and contacted a foreign government with the hope of eliciting interest in a financial arrangement in exchange for the information. Mrs. Toebbe did none of this. She did not concoct the plan, did not steal any classified information (indeed she did not have a security clearance to have access to the information) did not scan, copy, package, or store any classified information, did not create any email addresses or crypto currency wallets, and did not contact or communicate with any believed foreign governments. By all accounts, the extent of Mrs. Toebbe's involvement in this scheme essentially amounted to acting as a look out on three "dead drops" of information.

As the prosecutor himself said:

> Mr. Toebbe is the one who selected classified information to smuggle from a secure government facility. He then smuggled it from that facility. He digitized the removed documents and uploaded them to an encrypted laptop. He got rid of the removed documents, the hard copies. He created encrypted email accounts. He opened cryptocurrency wallets. He communicated with -- he contacted the government by mailing a proposal letter. He then communicated with a purported foreign official to develop a plan to exchange restricted data for monetary payment. He uploaded classified information to SD cards to be left at dead drops. He concealed the SD cards in a peanut butter sandwich, gum packages, and a Band-Aid wrapper. He serviced the dead drops. He provided the decryption key for the SD cards. He provided the instructions for cryptocurrency payments.
>
> The defendant did none of those things. Really her offense boils down to acting as a cover and a lookout on three occasions in a three-month period. Nothing more than that. Nothing less.

J.A. 172-173.

After Mrs. Toebbe and her husband were initially arrested and ordered detained pending trial, she employed the cover story that her husband created. She also attempted to send him two letters through covert means at the jail referencing the same story. These letters never reached Mr. Toebbe and in the words of the prosecutor, "they had no impact whatsoever on the prosecution of this case." J.A. 255.

## B. The first plea agreement

Mrs. Toebbe then accepted responsibility for her conduct and entered into a plea agreement with the government. This plea agreement contained a binding term of incarceration for a period of three years, *see* J.A. 153-160, which at all relevant times the parties maintained was the appropriate resolution in this case, properly accounting for, among other factors, her role in the offense and substantial assistance to the government. J.A. 171 ("the Government believes that the statutory sentencing factors do support a sentence of 36 months for Ms. Toebbe in this case for a few reasons…" noting her limited, non-essential role in the offense; sentencing disparities; her post-plea cooperation which "substantially assisted the Government; and the Navy's consultation and agreement with the sentence").

The district judge rejected this plea agreement. In doing so, the court characterized a three-year term in prison as "relatively minimal incarceration," called an espionage offender "a felon of the worst kind," questioned the immutable fact submitted by all parties (including the Navy) that the information at issue was classified at the "Confidential"

level rather than "Secret" or "Top Secret,"[1] and speculated, contrary to all evidence, that Mrs. Toebbe might possess passcodes to other cryptocurrency wallets which her husband may have created to hide the proceeds of their unlawful activity. J.A. 169-170, J.A. 176-177, J.A. 191. This rumination on materially false theories would continue to infect many of the district court's rulings throughout this matter and ultimately contributed to compromising the integrity of the proceedings overall.

## C. The second plea agreement and the government's sentencing recommendation

The parties then entered into a second plea agreement. This agreement bound the district court to the low-end of the guidelines range, which the plea agreement and 5K motion contemplated as nine years.[2] To the government's credit, and because it was, and has always been, the right resolution, the government maintained its position and

---

[1] *See also* United States' Classified Supplemental Sentencing Memorandum for Jonathan Toebbe, filed with the Classified Information Security Officer (hereinafter "*classified filing*").

[2] The plea agreement (in paragraphs 4 and 15) set forth a base offense level of 37, a 3-level reduction for acceptance of responsibility, ███████ ████████████████████████████████████████████ J.A. 200-222, J.A. 469-474. This results in an offense level 31. Ms. Toebbe, with no criminal history, is a criminal history category I. The corresponding guidelines range is 108-135 months.

the parties jointly recommended a sentence of three years

imprisonment:

> THE COURT: So the government is asking me to grant the motion for variant sentence and not sentence this defendant to any more than 36 months, 3 years?

> MR. DOUGLAS [PROSECUTOR]: Yes, Your Honor.

> THE COURT: Why would I do that when that's the very heart of the basis for why I rejected the plea agreement itself, the original plea agreement, in Ms. Toebbe's case?

> MR. DOUGLAS: For all the reasons we've previously stated, Your Honor.

> THE COURT: Okay. Recite them again.

> MR. DOUGLAS: The seriousness of the offense. She is not the person with access. The disparity that this would create for someone who was simply a lookout on two or three occasions, because of her cooperation, because there is no concern about there being a Plan C. And for all those reasons under 3553(a), this should not be a sentence anywhere near 262 months.

> THE COURT: And you're asking me to sentence her to 3 years, 36 months?

> MR. DOUGLAS: Yes, Your Honor.

J.A. 290.

### D. The district court's sentence

Despite the government's insistence that Mrs. Toebbe's sentence

"should not be a sentence anywhere near 262 months," *id.*, the district

court made every adverse finding imaginable against Mrs. Toebbe, based at least in part on entirely false premises, to increase the binding guidelines range from the 108 months contemplated in the plea agreement ▮▮▮▮▮ to 262 months. Then the district court sentenced Mrs. Toebbe to 262 months, a period almost three years greater than that of her husband, the principal offender, and 19 years greater than the joint recommendation of the parties. *See* J.A. 332, J.A. 347.[3]

First, over the joint recommendation by both parties, the district court ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Then, the district court added two offense level points for obstruction of justice based on the intercepted notes that Mrs. Toebbe attempted to send to her husband before she ever entered into a plea agreement and which the government insisted had "no impact whatsoever on the prosecution of this case." J.A. 255.

---

[3] The Court also imposed a fine of $50,000, which was roughly $4,000 more than the fine that her husband received.  *See* J.A. 335, J.A. 351.

After that, based on the obstruction of justice enhancement for conduct that predated any plea agreement, contrary to the Presentence Report, and over the objection of both defense and prosecution, the district court denied Mrs. Toebbe a three-level reduction for accepting responsibility. J.A. 258-265. The defense was not the only party protesting this finding; the prosecutor also argued it was unwarranted and excessive:

> MR. DOUGLAS: Her conduct was early on in the case. She has pled guilty twice -- twice in a timely manner that avoided any trial preparation and, in fact, allowed us to focus on Mr. Toebbe's cooperation which again -- I don't think it's a small matter  - the Department of Navy highly valued….
> ….
>
> MR. DOUGLAS: The prosecution is the victim of this obstruction of justice -- right? -- because we're talking about affecting the prosecution. So I'm trying to give the Court the perspective that the prosecution had in this case and how it actually worked.
>
> THE COURT: Okay.
>
> MR. DOUGLAS: She pled guilty and accepted responsibility so we could then focus on him. Get his cooperation which was very valuable to the Department of Navy. Then she even did more than that by supplementing his cooperation because there was a piece of information that he said she had, and she gave us immediately, and it was extremely helpful in assessing the scope of his conduct and any further potential damage.
> ….

MR. DOUGLAS: Still, in the government's opinion, she accepted responsibility and she cooperated. And now she's facing ten more years for two letters that –

THE COURT: You find that laughable?

MR. DOUGLAS: -- did not -- did not make it to the defendant

THE COURT: You find that laughable, Mr. Douglas?

MR. DOUGLAS: It had no effect.

THE COURT: No, my question is, do you find that laughable?

MR. DOUGLAS: I find it to be under the application of the 3553 factors excessive to go ten years on top of a sentence for two letters that did not make it to the recipient and had no effect on the case.

J.A. 260-262, J.A. 285-286.

### E. The district court's abandonment of judicial neutrality and findings based on materially false theories.

Throughout the proceedings, the district court repeatedly took positions contrary to those jointly held by both prosecution and defense to such a degree that it abandoned judicial neutrality and based its holdings on materially false theories. In doing so, the district court: assumed the role of ███████████████████████████, *see* J.A. 442-468; showed little regard to sentencing disparities, *see* J.A. 284-287; relied on inapt analogies, *see* J.A. 284-285; developed and

relied on a theoretical and unfounded "Plan C," *compare* J.A. 274-275, J.A. 301 *with* J.A. 287-288, J.A. 290; contrary to the agreed upon and well-established facts, speculated that Mrs. Toebbe was the one who actually created the criminal scheme, *compare* J.A. 299 *with* J.A. 176, J.A. 472, J.A. 426; and ultimately sentenced Mrs. Toebbe to a term of imprisonment that the district court itself explained afforded Mrs. Toebbe no benefit for her decision to plead guilty and cooperate with the government. J.A. 300-301.







### b. *Developing and then relying on a theoretical and baseless "Plan C"*

Throughout Mrs. Toebbe's case, the district court continued to develop and rely on a theory, without evidence, that she and her husband had an undisclosed plan to sell additional classified information following their release from prison. *See* J.A. 461 (wondering whether there is some "exit plan" out there); J.A. 463 ("I find, there's still some uncertainty regarding whether it's the entire substance of the conspiracy…"); J.A. 274, J.A. 287-288 (pondering the existence of a "plan C"); J.A. 275 (speculating that "she may know where it's buried."). All *three* parties – the government, Mrs. Toebbe's counsel, and Mr. Toebbe's counsel—impressed upon the court the non-existence of a "Plan C." *See e.g.* J.A. 274, J.A. 325; *classified filing*. The prosecutor articulated it best, stating:

> **Your Honor, there is no evidence of a Plan C, full stop**. This was not a fly-by-night investigation conducted by amateurs. This was the Federal Bureau of Investigation. We're talking about an entire squad from the FBI Field Office in Pittsburgh comprised of numerous agents and analysts. They received support from several field offices across the entire country, including the Baltimore Field Office, the Washington Field Office, headquarter support, support from Quantico. They also had support from the NCIS in this case.

It was an extensive investigation. It included three dozen search warrants across multiple districts. We searched electronic devices, electronic accounts. We searched their residence. We searched their vehicles. We searched his Naval Reactors office. We searched his satellite office on the campus of the Naval Academy. We also obtained search warrants for location information on their cell phones. We also obtained a search warrant to place a tracking device on Mr. Toebbe's vehicle they traveled to and from work. We had the GPS information on their phones for several months. We had the tracker on his car for several -- for a couple of weeks. And there just is no evidence that there was some other location that he was -- could be storing something.

Then we meet with him for over 20 hours, and he gives us access to his heavily-encrypted laptop. And it's clear from the review of the laptop, it was the universal laptop that contained all of the restricted data that he had been referencing in the letters that he was dropping at the sites. **So there is no evidence that there is some type of Plan C. In fact, all of the evidence goes against such a conclusion.**

J.A. 287-288 (emphasis added).

Yet despite the assurances from all three parties, including the party who conducted a thorough and complete investigation of the case, the district court nevertheless sentenced Mrs. Toebbe in part on the basis of a non-existent "plan C" involving non-existent classified information that Mrs. Toebbe does not have. J.A. 301 (explaining that the 262-month sentence was necessary because, "[l]ooking at the length of this sentence and given likely technological and military advances, by

16

the time this defendant is released from imprisonment, any information she has would most certainly be outdated, stale, and worthless to any nation who would want to cause us harm.").

### c. *Speculating that Mrs. Toebbe actually created the criminal scheme contrary to the agreed upon and well-established facts*

The court repeatedly rejected the undisputed fact that Mr. Toebbe was the individual who came up with the illegal plan. The prosecutors debriefed Mr. Toebbe for over 20 hours, they had access to all his electronics, and he himself never denied coming up with this scheme. Indeed, the prosecutor described Mr. Toebbe as "the person who came up with this idea." J.A. 176; *see also* J.A. 472 ███████████████ ███████████████████████████████ ███████████████████████████████ █████████████████████████████ ████████████████████████ Yet, when imposing a 262-month sentence the court insisted that "it was most probably Mrs. Toebbe that [sic] was driving the bus." J.A. 299.

### d. *Failing to account for unwarranted sentencing disparities*

Both the defense and the prosecution provided the district court with comprehensive information on disparities that supported a three-year sentence. J.A. 174 (prosecutor explaining that "the requested sentence avoids unwarranted sentencing disparities," and detailing the cases of Marjorie Mascheroni and Gwendolyn Myers); *see* J.A. 209-219. Not only the did the district court fail to appropriately account for these cases, the district court created an unwarranted sentencing disparity within Mrs. Toebbe's own case, sentencing Mrs. Toebbe's husband, the principal offender, to three years less that Mrs. Toebbe. As the prosecutor stated: "It's universally accepted that the person with access, the person who is trusted, the person who has the specialized knowledge of the classified information should be punished more severely than someone who might have helped in some way. For example, as a lookout…. this will be a disparity. If the Court sentences Mrs. Toebbe to the low end of this range or even half the low end of this range, it will be a disparity … as has been accepted by several courts across this land, acts as should be punished more severely, period. And it's logical. The person who had -- it couldn't have been committed

without him." J.A. 284-285; *see also* J.A. 289 (prosecutor stating that the government "stands by its previous recommendation… this is not a case for such a disparity.").

### e. *Employing inapt analogies*

The district court also continued to analogize Mrs. Toebbe's conduct to bank robbery, despite the prosecution's insistence that the analogies were unsuitable. *see* J.A. 284-285, J.A. 297-298 ("Completely different situation. This isn't a drug case. This isn't a bank robbery. This isn't a murder for hire. This is an espionage case.").

### f. *Denying acceptance of responsibility*

As explained *supra Statement of Facts* §C, Mrs. Toebbe's binding guidelines range contemplated in the plea agreement ███████ ████ was 108 months. The language in the agreement appropriately reflected a three-level decrease in offense level points, accounting for Mrs. Toebbe's decision to accept responsibility and plead guilty. This plea agreement was executed after the letters at the jail had already been intercepted and provided to the prosecutor. Thus, when contemplating, drafting, and executing the plea agreement, that conduct was accounted for.

Contrary to the language in the plea agreement, and in the face of
Mrs. Toebbe having pled, not once, but twice, the district court denied
Mrs. Toebbe acceptance of responsibility. Instead, the district court
sentenced Mrs. Toebbe to guidelines that were the same as if she had
proceeded to trial under the "worst case scenario." Specifically, the
district court stated:

> I compared the defendant's exposure, worst case scenario if
> she went to trial and was convicted on all three counts, to the
> guideline calculations pursuant to the plea agreement [as the
> district court calculated them].… there is no difference
> between the guideline calculations [as the district court
> calculated them] if Mrs. Toebbe had gone to trial and been
> convicted on all three counts and if the Court accepted the
> binding plea under the guideline calculations, which I found
> to be appropriate and applicable in this case.

J.A. 300-301.

## SUMMARY OF THE ARGUMENT

I.    Mrs. Toebbe did not waive her right to a fair and adequate
sentencing process. She did not waive her right to a have her
sentence based on facts, not unfounded speculation. She did not
waive her right to have her sentence determined by a district
court adhering to the principal of party presentation and
judicial neutrality.

20

II.  The district court violated Mrs. Toebbe's right to a fair and
     adequate sentencing process by basing Mrs. Toebbe's sentence
     on unfounded theories dispelled by both parties, and inserting
     itself to a degree that violated judicial neutrality and the
     principle of party presentation, namely that against the
     protests of both prosecution and defense, the district court:
     ███████████████████████████████████████████████;
     added an obstruction of justice enhancement; ignored
     sentencing disparities; denied Mrs. Toebbe credit for pleading
     guilty; and sentenced her to a period of incarceration far in
     excess of the jointly recommended sentence and term outlined
     in the binding plea agreement.

III. It would be manifestly unjust to uphold Mrs. Toebbe's sentence
     because her sentence was so far beyond the anticipated range
     that to deny the right of appeal would raise serious questions of
     fundamental fairness. Even the prosecutor called the district
     court's ruling excessive and that it violated a universally held
     principle on levels of culpability. Further, the district court
     overtly sentenced Mrs. Toebbe based on guidelines that were

21

the same as if she proceeded to trial. Thus, if the plea
agreement was meaningless to show she accepted responsibility
and cooperated, then it should likewise be meaningless with
respect to showing she waived her right to appeal. Finally,
declining to enforce the appeal waiver in this case would not
undermine precedent for future appellate waivers. Instead, it
would maintain the status quo to incentivize pleading guilty,
which in matters of national security, is critical to protecting
the country.

IV.  Mrs. Toebbe's case should be remanded to a different district
judge. The district judge in this case failed to remain neutral
and to adhere to the principle of party presentation. The
district judge made every adverse finding imaginable against
Mrs. Toebbe contrary to the cries of protest of both parties, and
district judge's materially false theories upon which she based
Mrs. Toebbe's sentence infected the entirety of the proceedings
on every matter before her. Thus, to preserve both the
appearance and substance of Mrs. Toebee's due process

protections, a different district judge should be assigned on remand.

V.    Mrs. Toebbe's sentence violated the Eighth Amendment because her 21.5-year sentence is so grossly disproportionate to her conduct of standing lookout at a drop of confidential information three times. It is grossly above the 3-year sentence that the prosecutor recommended, and it is grossly in excess of the sentences of other similarly situated defendants.

## ARGUMENT

## I.    Mrs. Toebbe did not waive her right to appeal these matters.

The validity and scope of a defendant's appellate waiver is reviewed de novo." *United States v. Boutcher*, 998 F.3d 603, 608 (4th Cir. 2021).  An appellate waiver is enforceable if "it is valid and the issue appealed is within the scope of the waiver." *United States v. Adams*, 814 F.3d 178, 182 (4th Cir. 2016).

However, "a defendant who waives his right to appeal does not subject himself to being sentenced entirely at the whim of the district court." *United States v. Marin*, 961 F.2d 493, 496 (4th Cir. 1992); *see also United States v. Johnson*, 410 F.3d 137, 151 (4th Cir. 2005). ("An

23

appeal waiver does not always preclude an appeal."). A "general waiver of the right to appeal sentence in plea agreement does not bar appellate review of a claim that the sentence was imposed in violation of certain 'fundamental and immutable' constitutional guarantees." *United States v. Attar*, 38 F.3d 727, 732 (4th Cir. 1994) (citing *United States v. Bushert*, 997 F.2d 1343, 1351 n. 18 (11th Cir. 1993)); *see also*, *United States v. Archie*, 771 F.3d 217, 223 (4th Cir. 2014)(appellate waiver is unenforceable if "the sentencing court violate[s] a fundamental constitutional or statutory right that was firmly established at the time of sentencing.")  "[A] defendant who waives the right to appeal nevertheless 'retains the right to obtain appellate review of his sentence on certain limited grounds,' even if those grounds are *not* specified in the plea agreement." *United States v. Marsh*, 944 F.3d 524, 528 (4th Cir. 2019)(citations omitted)(emphasis in original).

"[D]ue process may require that an appeal be heard despite a previous waiver." *United States v. Howle*, 166 F.3d 1166, 1169 n.5 (11th Cir. 1999). "[The Court] may decline to enforce a valid appeal waiver … if enforcing the waiver would result in a miscarriage of justice." *United*

*States v. Burt*, 734 F. App'x 881, 884 (4th Cir. 2018) (citing *United States v. Ware*, 623 F. App'x 119, 120 (4th Cir. 2015)).

An appeal waiver may also be set aside "when constitutional concerns are implicated, whether those concerns be related to a particular constitutional provision such as the ex post facto clause, or whether it simply appears that the ultimate sentence is so far beyond the anticipated range that to deny the right of appeal would raise serious questions of fundamental fairness. [The court] may also … accept such an appeal for lesser improprieties, including abuse of judicial discretion." *United States v. Rosa*, 123 F.3d 94, 101 (2d Cir. 1997).

This is part of a broader policy concern. "[T]he modicum of finality purchased with unilateral appellate waivers must be weighed against the cost of erroneously long sentences to both the public and the individual defendants. The public is perhaps better served by keeping inviolate the mechanisms aimed at ensuring a defendant receives fair punishment, namely effective assistance of counsel, an impartial sentencing tribunal, and meaningful oversight to correct either deficiencies in attorney performance or judicial errors that result in

prejudice." *United States v. Mutschler*, 152 F. Supp. 3d 1332, 1341 n.8 (W.D. Wash. 2016); *see also United States v. Townsend*, No. 19-20840, 2021 U.S. Dist. LEXIS 37403, at *15 (E.D. Mich. Mar. 1, 2021) (Expressing dissatisfaction with the unilateral nature of appeal waivers given that Congress intended that both the defendant and the government would be permitted to appeal a criminal sentence and that prohibiting the defendant from appealing a suspected guideline calculation mistake, but allowing the government to do so, inevitably will lead to "systemic distortion" and "skewed case law")(citing *United States v. Perez*, 46 F. Supp. 2d 59, 69 (D. Mass. 1999); *United States v. Raynor*, 989 F. Supp. 43, 46 (D.D.C. 1997)).

In this case, as the government correctly noted in its Motion to Dismiss, Mrs. Toebbe waived her right to appeal her conviction and sentence. *See* ECF No. 12-1 at 1. However, Mrs. Toebbe did not, and cannot, waive her right to a fair sentencing process with a neutral judge basing rulings on fact and not unfounded theories. *See Attar*, 38 F.3d at 732 ("[A] defendant's agreement to waive appellate review of his sentence is implicitly conditioned on the assumption that the proceedings following entry of the plea will be conducted in accordance

with constitutional limitations."); *see also Gardner v. Florida*, 430 U.S.

349 (1977) (explaining that a defendant has a right to due process

during the sentencing stage)

In this case, the errors committed by the district court "were

errors that the defendant[] could not have reasonably contemplated

when the plea agreements were executed." *See United States v. Blick*,

408 F.3d 162, 172 (4th Cir. 2005). Thus, it is "not reasonable (or fair)" to

enforce the appeal waiver. *Id.* In *Blick*, this Court enforced the

defendant's the appeal waiver because "Blick was sentenced precisely in

the manner that he anticipated." *Id.* Mrs. Toebbe, however, was not.

Mrs. Toebbe didn't anticipate, nor did the plea agreement

contemplate, that the district court would violate the principle of party

presentation. Mrs. Toebbe didn't anticipate, nor did the plea agreement

contemplate, a sentence roughly 13 years above the binding guidelines

as outlined in the plea agreement ████████████████████ Mrs.

Toebbe didn't anticipate, nor did the plea agreement contemplate, an

unfounded enhancement for obstruction of justice. Mrs. Toebbe didn't

anticipate that the district judge would abandon her role as neutral

arbiter, refusing to credit even the most basic factual premises

universally accepted by all parties, and developing and relying on a theoretical "plan C," a notion that the *prosecutor* vehemently tried to dispel. J.A. 287-288. ("Your Honor, there is no evidence of a Plan C, full stop."). And certainly Mrs. Toebbe didn't anticipate, nor did the plea agreement contemplate, Mrs. Toebbe being denied credit for doing the very thing she did – plead guilty.

By inserting itself to the degree that it did, the district court so severely infected the sentencing the sentencing process that Mrs. Toebbe's due process rights were violated during the course of the sentencing hearing to an extent that could not have been contemplated by, and transcends, the appeal waiver.

## II. Mrs. Toebbe did not receive a fair sentencing process because district court sentenced Mrs. Toebbe based on materially false theories, abandoned judicial neutrality, and repeatedly violated the principle of party presentation.

A claim of due process violations during sentencing is reviewed de novo. *de Belbruno v. Ashcroft*, 362 F.3d 272, 278 (4th Cir.2004)("This court reviews legal issues, including claims of due process violations, de novo."); *United States v. Hollins*, 498 F.3d 622, 629 (7th Cir. 2007)(due process challenges to sentencing subject to de novo review); *United*

*States v. Hall*, 965 F.3d 1281, 1293 (11th Cir. 2020)("We review de novo constitutional challenges to a sentence.").

It is a fundamental concept that "[a] fair trial in a fair tribunal is a basic requirement of due process. Fairness, of course, requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness." *In re Murchison*, 349 U.S. 133, 136 (1955).

In this case, the district court improperly inserted itself in the proceedings, sentencing Mrs. Toebbe based on inaccurate theories, abandoning its role as neutral arbiter, and repeatedly violating the principle of party presentation. This occurred when the district court: based Mrs. Toebbe's sentence on a theoretical "Plan C" and other faulty suspicions that factually did not exist; improperly ███████ ████████████████████████████████ improperly denied Mrs. Toebbe acceptance of responsibility; and ignored sentencing disparities. Even if each of these errors on their own do not constitute a procedural due process violation, collectively, the district court's improper insertions infected Mrs. Toebbe's hearing to such a degree that Mrs. Toebbe was denied a fair process. *See e.g. United States v. Martinovich*,

810 F.3d 232, 240 (4th Cir. 2016)(Wynn, J. concurring)(explaining that improper interference and excessive interruptions "tends to undermine the public's confidence in the integrity of the judiciary. But more importantly, such conduct challenges the fairness of the proceeding.").

That each of the failings in Mrs. Toebbe's sentencing occurred over the cries of both the prosecution and the defense jointly, makes it even more clear that the district court failed to remain neutral and provide a fair sentencing process. The district court "departed so drastically from the principle of party presentation as to constitute an abuse of discretion." *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1578 (2020).

"In our adversarial system of adjudication, we follow the principle of party presentation." *Id.* at 1579. "[I]n both civil and criminal cases, in the first instance and on appeal…we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Greenlaw v. United States*, 554 U.S. 237, 243-44 (2008) This is because "as a general rule, '[o]ur adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments

entitling them to relief.'" *Sineneng-Smith*, 140 S. Ct. at 1579 (citing *Castro v. United States*, 540 U.S. 375, 381-383 (2003)).

"[Courts] do not, or should not, sally forth each day looking for wrongs to right. We wait for cases to come to us, and when they do we normally decide only questions presented by the parties. Counsel almost always know a great deal more about their cases than we do, and this must be particularly true of counsel for the United States, the richest, most powerful, and best represented litigant to appear before us." *Greenlaw* 554 U.S. at 244 (citing *United States v. Samuels*, 808 F.2d 1298, 1301 (8th Cir. 1987); *see also Hartmann v. Prudential Ins. Co.*, 9 F.3d 1207, 1214 (7th Cir. 1993) ("Our system . . . is not geared to having judges take over the function of lawyers…."). "Acting to the contrary … increases the chances that we may decide an issue erroneously…." *United States v. McReynolds*, 964 F.3d 555, 571 (6th Cir. 2020)(Giffin, J. dissenting)(citations omitted).

This is not to say that a district court must accept every jointly held position in a case. However, in this case, the repeated disregard for the jointly held positions of the two adverse parties beginning with rejecting the initial plea agreement, then on each of the points based in

fact and law detailed *infra §a-c*, and ending with a sentence so drastically above the parties' joint recommendation is evidence that the district court failed to exercise the judicial restraint necessary to remain neutral during Mrs. Toebbe's sentencing process. *See In re A&D Ints., Inc.*, 33 F.4th 254, 257 (5th Cir. 2022)("Ensuring judicial neutrality and preventing district courts from needlessly stirring up litigation is good cause for a writ to issue."); *Hill v. Corizon Health*, Inc., 712 F. App'x 811, 814 (10th Cir. 2017)("Once we start imagining grounds for reversal that the parties have not raised, we can easily cross the line into advocacy. Crossing that line can serve not only to compromise our neutrality but also to create unintended consequences….")(Brisco, J. concurring); *United States v. Miles*, 10 F.3d 1135, 1140 (5th Cir. 1993)("the role a district court must play after a plea agreement is reached requires the greatest possible assurance of judicial neutrality")(internal quotations and citations omitted); *Anderson v. Sheppard*, 856 F.2d 741, 746 (6th Cir. 1988) ("Because of the fundamental need for judicial neutrality, we hold that the harmless error doctrine is inapplicable in cases where judicial bias and/or hostility is found to have been exhibited at any stage of a judicial

proceeding."); [4] *United States v. Hickman*, 592 F.2d 931, 933 (6th Cir. 1979)(explaining that great care must be taken by a judge to "always be calmly judicial, dispassionate and impartial. He should sedulously avoid all appearances of advocacy . . . .")(citations omitted).

### a. *The district court improperly based Mrs. Toebbe's sentence on inaccurate information.*

"Clearly, a defendant may not be sentenced on the basis of information which is materially untrue." *United States v. Brice*, 565 F.2d 336 (5th Cir. 1977)(citing *United States v. Tucker*, 404 U.S. 443 (1972); *Townsend v. Burke*, 334 U.S. 736 (1948)). "[D]ue process is violated when the information on which the defendant is sentenced is 'materially untrue' or is, in fact, 'misinformation.'" *Livingston v. Annucci, No.* 9:18-cv-00803-JKS, 2021 U.S. Dist. LEXIS 53129, at *13 (N.D.N.Y. Mar. 22, 2021) (citing *Townsend*, 334 U.S. at 741) (concluding sentencing based on "materially untrue" assumptions concerning a

---

[4] This rule is strict and does not require any type of malice. *See e.g. id.* ("such a stringent rule may sometimes bar trial by judges who have no actual bias and who will do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way 'justice must satisfy the appearance of justice.'" (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)).

prisoner's criminal record was inconsistent with due process of law).

"The Supreme Court has held that convicted defendants have a due

process right to be sentenced on the basis of accurate information. The

foundation of that right is due process protection against arbitrary

government decisions. A convicted offender does not have a

constitutional right to a particular sentence available within a range of

alternatives, but the offender does have a right to a fair sentencing

*process* --one in which the court goes through a rational procedure of

selecting a sentence based on relevant considerations and accurate

information." *United States v. ex rel. Welch v. Lane*, 738 F.2d 863, 864-

65 (7th Cir. 1984)(citations omitted).

A defendant has a due process right to be sentenced based on

accurate information, and the threshold for accuracy is whether the

information has "sufficient indicia of reliability to support its probable

accuracy." *United States v. Pulley*, 601 F.3d 660, 665 (7th Cir.2010); *see*

*also United States v. England*, 555 F.3d 616, 622 (7th Cir. 2009) (A

sentencing court necessarily has "discretion to draw conclusions about

the testimony given and evidence introduced at sentencing," but "due

process requires that sentencing determinations be based on reliable

34

evidence, not speculation or unfounded allegations."). In *United States v. Juwa*, 508 F.3d 694 (2d Cir. 2007), the Second Circuit found procedural error when the district court enhanced the defendant's sentence based on the uncorroborated assumption that he had sexually abused a minor "on repeated occasions," where the defendant pled guilty to only a single instance of felony sexual abuse; *see also United States v. Cossey*, 632 F.3d 82, 88 (2d Cir. 2011) (explaining that it is "impermissible" and "plain error" for the district court to base its decision of recidivism on its "unsupported theory" and that doing so affects the sentence; and further that "[i]t is uncontroversial to conclude that a sentencing decision that relies on factual findings that were unsupported in the record, and thus could not possibly have been established by a preponderance of the evidence, seriously affects the fairness, integrity, and public reputation of judicial proceedings.").

In this case, the sentencing errors were even more speculative and far-reaching than in *Juwa*, 508 F.3d 694. Specifically, the district court repeatedly referenced a "Plan C" that the district court surmised existed with no factual basis and contrary to the firm representations of all three parties (prosecution and both defendants). J.A. 287-288. Not only

did the district court repeatedly reference this mere suspicion, the district court also developed and relied on this theory as a basis to justify Mrs. Toebbe's 262-month sentence. J.A. 301 (explaining that the length of the sentence the district court just imposed accounts for any classified information Mrs. Toebbe still has so that it will be "stale" and "worthless" by the time she is released).

The district court also premised Mrs. Toebbe's 262-month sentence on an unfounded theory that Mrs. Toebbe "was most probably…driving the bus." J.A. 299. This notion was again opposed by both prosecution and defense. *See* J.A. 176 ( *First Plea Agreement Hearing*, prosecutor referring to Mr. Toebbe as "the person who came up with this idea."); J.A. 471 ██████████████████████████ ████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ █████████████████████████████ And the district

judge continued to rely on faulty analogies. J.A. 285 (prosecutor explaining that this is a "completely different situation. This isn't a drug case. This isn't a bank robbery. This isn't a murder for hire. This is an espionage case."). Thus, the sentencing hearing violated Mrs. Toebbe's due process rights because she was not sentenced based on "reliable evidence," but instead on "speculation or unfounded allegations" refuted by both parties. *England*, 555 F.3d at 622.

These unfounded theories, particularly the one regarding additional classified information buried in the ground somewhere, were overtly provided as a basis for Mrs. Toebbe's 262-month sentence, *see* J.A. 301, however, they also would have necessarily infected the district court's decisions on other matters during the sentencing process as well. For example, a notion, however baseless, that Mrs. Toebbe may still have access to hidden, undisclosed classified information would have factored into the district court's decision ███████████████████ ████████████████████████████████████████ ████████████████████ This false suspicion would have also contaminated the district court's decision to deny Mrs. Toebbe acceptance of responsibility points because, after all, a defendant who is

perceived to still be continuing the crime would not fully be accepting

responsibility. And it would have impeded the district court's ability to

fairly assess sentencing disparities if the district court speculated that

the other defendants' offense embodied the full criminal conduct

whereas Mrs. Toebbe's had not. *See e.g. Cossey*, 632 F.3d at 88

(explaining that vacating the sentence is appropriate because the

district court's own "unsupported theory" "affected the court's decision

to sentence him to imprisonment, to impose a prison term that is

lengthy, and to order him to submit to supervised release for life . . .")

To be clear, each of these faulty decisions by the district court

were improper in other respects as discussed in more detail *infra §a-c*,

but one of the motivating factors behind the myriad of injustices that

compromised the integrity of Mrs. Toebbe's entire sentencing process

would have been the materially false theories that the district court

developed against the cries of opposition from both parties.









### c. *The district court improperly denied Mrs. Toebbe acceptance of responsibility*

The district court in this case *sua sponte* raised a question of Mrs. Toebbe's acceptance of responsibility and then denied her credit for pleading guilty. No party in this case (of the two adverse parties *and* the probation office) raised an issue of forfeiting Mrs. Toebbe's acceptance of responsibility points under the guidelines. In fact, the prosecutor, Mrs. Toebbe's adversary, vehemently opposed this decision, calling the district court's decision "excessive." J.A. 286; *see also* J.A. 260-263 (prosecutor arguing "all th[e] reasons" why Mrs. Toebbe should not be denied acceptance of responsibility). This alone violates the well-established principle of party presentation, displays another instance in

which the district court improperly intervened, abandoned judicial

neutrality, and warrants remand by this Court to a different district

judge.

Further, Mrs. Toebbe was objectively entitled to an acceptance of

responsibility reduction because her conduct predated the plea

agreement and the government was aware of this conduct at the time

the plea agreement was executed. The district court's ruling erroneously

would mean that if a defendant ever, at any point, attempts to obstruct

justice, he can never accept responsibility for his conduct for the

purposes of the guidelines. Courts have rejected this faulty notion, not

only because it is illogical, but also based on sound policy concerns. For

example, as the district court stated in *United States v. Torres-Teyer*,

"Were courts to hold that any obstructive conduct, however early in the

investigation or prosecution of a case and whatever its relationship to

the charges ultimately brought, forever disentitled a defendant to credit

for later acceptance of responsibility, this incentive would be ill served."

322 F. Supp. 2d 359, 368 (S.D.N.Y. 2004); *see also United States v.*

*Gregory*, 315 F.3d 637, 640 (6th Cir. 2003)("Cases in which obstruction

is not inconsistent with an acceptance of responsibility arise when a

43

defendant, although initially attempting to conceal the crime,

eventually accepts responsibility for the crime and abandons all

attempts to obstruct justice." (citing *United States v. Hopper*, 27 F.3d

378 (9th Cir. 1994)).

### d. *The district court improperly ignored sentencing disparities*

The district court denied Mrs. Toebbe a fair sentencing process

when it ignored stark, unwarranted sentencing disparity it created over

the objections of both parties. *See United States v. Zuk*, 874 F.3d 398,

412 (4th Cir. 2017)(vacating the defendant's sentence and remanding

for resentencing based in part on the district court's sentence producing

an unwarranted sentencing disparity).

The most obvious error was the undue disparity that the district

court created in this very case, sentencing Mrs. Toebbe to nearly three

years more imprisonment than her husband, the principal offender, and

also fining her $3,000 more than her husband. Doing this, the

prosecutor explained defied the "universally accepted" principle "that

the person with access, the person who is trusted, the person who has

the specialized knowledge of the classified information should be

punished more severely than someone who might have helped in some

way." J.A. 284; *see also* J.A. 289 (prosecutor explaining that the government "stands by its previous recommendation," of three years incarceration, that "this is not a case for such a disparity").

Further, counsel for both Mrs. Toebbe and the government submitted sentences for other accomplices who committed espionage crimes. They ranged from individuals who were not charged at all to highest sentence of 81 months in prison. J.A. 208-221. The average sentence in this chart was 32 months. Not one sentence was even close to the 262-month sentence that Mrs. Toebbe received. The district court failed to account for these during the sentencing process when it imposed its "excessive" sentence. J.A. 286. Thus, like in *Zuk*, 874 F.3d at 412, the "magnitude of this disparity" requires remand to a different district judge for resentencing.

## III.   To uphold Mrs. Toebbe's sentence would be miscarriage of justice.

The legality of a criminal sentence is reviewed de novo. *United States v. Wright*, 59 F.3d 168, fn. 2 (4th Cir. 1995)("This court reviews de novo the legality of the sentence."); *United States v. Moriarty*, 429 F.3d 1012, 1025 (11th Cir. 2005)("[W]e review the legality of a sentence de novo.").

45

Diana Toebbe's "ultimate sentence [was] so far beyond the anticipated range that to deny the right of appeal would raise serious questions of fundamental fairness." *Rosa*, 123 F.3d at 101. The Court need not take defense counsel's word for it. The prosecutor in this case called such a sentence "excessive" and explained that it violated a universally held principle on levels of culpability. J.A. 284, J.A. 286.

As explained above, Mrs. Toebbe's due process rights were violated because her sentence was premised on false suspicions, not facts; the district court violated the principle of party presentation and abandoned neutrality; her sentence far exceeded that of any similar offender; it exceeded the principal offender's sentence by three years; exceeded the guidelines outlined in the plea agreement and ▮ by 13 years; exceeded the joint recommendation of the parties by 19 years; and her sentence denied her credit for the very things she did – plead guilty and cooperate with the government.

To condition a plea agreement on waiving one's right to appeal, but then have the district court ignore almost all the provisions in that plea agreement except for the appeal waiver frustrates the plea process as a whole. In other words, Mrs. Toebbe signed a plea agreement with an appellate waiver with an understanding that she would be credited

for doing just that – pleading guilty. Instead, the district court sentenced her as though she had *not* pled guilty. *See* Def.'s Ex. 6 at 78-79 (calculating the guidelines "worst case scenario" if she had gone to trial and finding no difference). If the plea agreement was meaningless to show she accepted responsibility and cooperated, then it is meaningless with respect to showing she waived her right to appeal as well.

Finally, declining to enforce the appeal waiver in this case would not undermine precedent for future appellate waivers. To the contrary, it would maintain the *status quo*, that is maintain a defendant's incentive to plead guilty and cooperate with the government, which particularly in national security matters, will always be of critical importance. *See classified filing.* For all these reasons, to uphold the sentence itself, and to sanction the due process violations that permeated the sentencing process, would be a miscarriage of justice.

## IV. Mrs. Toebbe's case should be remanded to a different district judge

A different judge should be assigned on remand if "just under the circumstances." *Liteky v. United States*, 510 U.S. 540, 554 (1994) (quoting 28 U.S.C. § 2106).

47

As explain *supra*, Mrs. Toebbe's judgment should be vacated because the district court abandoned neutrality, violated the principle of party presentation, and violated Mrs. Toebbe's right to a fair sentencing process through unfounded speculation and a variety of other cumulative errors. All of this denied Mrs. Toebbe due process of law. "[T]o preserve both the appearance and substance of [Mrs. Toebbe's] due process protections, upon remand this matter should be reassigned to a different judge…." *Kodeck v. Cregger*, No. CCB-17-2557, 2018 U.S. Dist. LEXIS 110729 (D. Md. July 2, 2018)*); see also United States v. Aberant*, No. 19-4786, 2021 U.S. App. LEXIS 34308, at *9-*10 (4th Cir. Nov. 18, 2021)("the case warrants remand to a different judge for resentencing. Assignment to a different judge will serve the public interest, especially as it minimizes even a suspicion of partiality." (internal quotations and citations omitted); *Cullen v. United States*, 194 F.3d 401 (2nd Cir. 1999)("There are occasions when a matter is appropriately remanded to a different district judge not only in recognition of the difficulty that a judge might have putting aside his previously expressed views, but also to preserve the appearance of justice.")(internal citations and quotations omitted); *United States v.*

48

*Leung*, 40 F.3d 577, 587 (2d Cir. 1994) ("Though we believe the District Judge could fairly sentence on remand, just as he undoubtedly did at the original sentencing, the appearance of justice is better satisfied by assigning the resentencing to a different judge."); *United States v. Campo*, 140 F.3d 415 (2nd Cir. 1998)("the appearance of impartiality would best be preserved by reassignment of this case."); *United States v. Stein*, 544 F.2d 96 (2nd Cir. 1976)("Under the circumstances, including the recognized difficulty which an original sentencing judge may have in rejecting or modifying prior conclusions and the necessity of maintaining the appearance of justice, we direct that the resentencing be conducted by a different judge."); *See Cossey*, 632 F.3d at 89 (directing resentencing by a different judge because the district court relied on its own "unsupported theory" which "affected the court's decision to sentence [defendant] to imprisonment, to impose a prison term that is lengthy, and to order him to submit to supervised release for life . . .")

## V.     Mrs. Toebbe's sentence violated the Eighth Amendment.

Whether a sentence violates the Eighth Amendment is reviewed de novo. *United States v. Said*, 798 F.3d 182, 196 (4th Cir. 2015).

The Eighth Amendment commands that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.[5] "Punishment is deemed cruel and unusual not only when it is 'inherently barbaric,' but also when it is disproportionate to the crime for which it is imposed." *United States v. Cobler*, 748 F.3d 570, 575 (4th Cir. 2014) (citing *Graham v. Florida*, 560 U.S. 48, 59 (2010); *Weems v. United States*, 217 U.S. 349, 367 (1910)).[6] "[N]o penalty is per se constitutional"; even "a single day in prison may be unconstitutional in some circumstances." *Id.* (citing *Solem v. Helm*, 463 U.S. 277, 290 (1983).

---

[5] Although the Fourth Circuit has held that an Eighth amendment claim falls within the scope of an appeal waiver, *see United States v. Mason*, 495 Fed. Appx. 373, 375 (4th Cir. 2012), other circuits have held the opposite. *See e.g. United States v. Mino*, 697 F. App'x 973, 974-75 (11th Cir. 2017); *United States v. Sullivan*, 498 Fed. Appx. 831, 835 (10th Cir. 2012); *United States v. Mejia*, 325 F. App'x 146 (3d Cir. 2009). Mrs. Toebbe submits that the Eighth Amendment challenge should be allowed to proceed, particularly in this case when the government agreed (and asserted at the sentencing hearing) that the district court's finding was excessive and created a disparity.

[6] To the extent the government may argue that the proportionality analysis is unavailable to a defendant who is not sentenced to life without the possibility of parole, that notion was dispelled in *Cobler*, 748 F.3d 570.

An as-applied Eighth Amendment challenge to a defendant's sentence raises the question of whether the term-of-years imposed is disproportionate "given all the circumstances in a particular case." *Graham*, 560 U.S. at 59. This analysis "does not require strict proportionality between crime and sentence," but "forbids only extreme sentences that are grossly disproportionate to the crime." *Id.* at 59-60 (quoting *Harmelin v. Michigan*, 501 U.S. 957, 997 (1991) (Kennedy, J., concurring)) (internal quotation marks omitted).

The first inquiry is whether "a 'threshold comparison' of the gravity of the offense and the severity of the sentence 'leads to an inference of gross disproportionality.'" *Cobler*, 748 F.3d 576 (citing *Graham*, 560 U.S. at 59-60; *Harmelin v. Michigan*, 501 U.S. at 1005). If this inference is drawn, then "the court is required to compare the defendant's sentence: (1) to sentences for other offenses in the same jurisdiction; and (2) to sentences for similar offenses in other jurisdictions. If this extended analysis validates the threshold determination that the sentence is grossly disproportionate, the sentence is deemed 'cruel and unusual' punishment under the Eighth Amendment." *Id.*

In this case, Mrs. Toebbe's 21.5-year sentence is so grossly disproportionate to her conduct of standing lookout at a drop of confidential information three times. It is grossly above the 3-year sentence that the prosecutor recommended, and it is grossly above the sentences of other similarly situated defendants. *See supra* §II(d). It "at the very least stirs the conscience" and should be vacated. *United States v. Singh*, 877 F.3d 107, 116 (2d Cir. 2017) (citing *United States v. Aldeen*, 792 F.3d 247, 255 (2d Cir. 2015)).

## <u>CONCLUSION</u>

Ms. Toebbe did not, and cannot, knowingly and voluntarily waive her right to a fair and adequate sentencing process with judicial neutrality based on facts and not unfounded theories. These errors by the district court at the sentencing hearing raise serious issues of process that transcend the appellate waiver and it would be manifestly unjust to affirm Mrs. Toebbe's sentence, particularly because it also violates the Eighth Amendment. Therefore, Mrs. Toebbe respectfully requests that this Honorable Court vacate her sentence and remand her case to a different district judge for resentencing.

## REQUEST FOR ORAL ARGUMENT

These issues raise serious concerns for Mrs. Toebbe, the integrity of the sentencing process, and the national security of the United States of America. Oral argument would aid this Honorable Court in deciding these significant issues. Therefore, Mrs. Toebbe respectfully requests that she be granted oral argument on this matter.

Respectfully Submitted,
DIANA TOEBBE
By Counsel

*/s/ Jessica N. Carmichael*
Jessica N. Carmichael, Virginia Bar 78339
CARMICHAEL ELLIS & BROCK, PLLC
108 N. Alfred Street, 1st FL
Alexandria, Virginia 22314
(703) 684-7908
jessica@carmichaellegal.com

*/s/ Barry P. Beck*
Barry P Beck
POWER, BECK & MATZUREFF
308 West Burke Street
Martinsburg, WV 25401
304-264-8870
bpbeck@frontier.com

## <u>CERTIFICATE OF COMPLIANCE</u>

1. The foregoing brief has been prepared in a proportionally spaced typeface using Microsoft Word, Century Schoolbook, 14 point.

2. Exclusive of the table of contents; table of citations; certificate of compliance and the certificate of service, the foregoing brief contains <u>10,405</u> words.

3. I understand that a material misrepresentation can result in the Court striking the brief and imposing sanctions.  If the Court so directs, I will provide an electronic version of the brief with the word or line printout.


_/s/ Jessica N. Carmichael_
Jessica N. Carmichael, Virginia Bar 78339

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on June 15, 2023, I electronically filed the foregoing Opening Brief of Appellant with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

I further certify, that on June 15, 2023, I served the Sealed version of the foregoing brief, via USPS, on counsel listed below:

Jarod J. Douglas
OFFICE OF THE
UNITED STATES ATTORNEY
P. O. Box 591
Wheeling, WV 26003

Danielle Tarin
U. S. DEPARTMENT OF JUSTICE
National Security Division
950 Pennsylvania Avenue, NW
Washington, DC 20530

*/s/ Jessica N. Carmichael*
Jessica N. Carmichael, Virginia Bar 78339