IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————————

No. 22-4689

———————————————

UNITED STATES OF AMERICA,

*Plaintiff–Appellee,*

v.

DIANA TOEBBE,

*Defendant–Appellant.*

———————————————

Appeal from the United States District Court
for the Northern District of West Virginia
*The Honorable Gina M. Groh, District Judge*

———————————————

BRIEF OF THE UNITED STATES - **PUBLIC (Redacted)**

———————————————

| | |
|---|---|
| William J. Ihlenfeld, II | Matthew G. Olsen |
| United States Attorney | Assistant Attorney General |
| | for National Security |
| | |
| Jarod J. Douglas | Danielle S. Tarin |
| Assistant United States Attorney | Appellate Attorney |
| United States Attorney's Office | U.S. Department of Justice |
| P.O. Box 591 | National Security Division |
| Wheeling, WV 26003 | 950 Pennsylvania Ave., N.W |
| (304) 234-0100 | Washington, DC 20530 |
| | (202) 532-4493 |

*Attorneys for the United States of America*

# Table of Contents

Page

Table of Authorities ..................................................................................v

Statement of Jurisdiction.........................................................................1

Statement of the Issues............................................................................1

Statement of the Case..............................................................................2

  I.   Procedural History ...........................................................................2

  II.   Statement of Facts............................................................................2

       A. The Offense Conduct................................................................2

       B. Indictment, Plea Agreements, and Sentencing.......................6

       C. Rulings Under Review ...........................................................21

Summary of Argument ...........................................................................22

Argument...............................................................................................24

  I.   Toebbe's Appeal Is Barred by Her Appeal Waiver ......................24

       A. Standard of Review ...............................................................24

       B. Legal Principles and Discussion ..........................................24

          1. The Appeal Waiver Is Valid...........................................26

          2. The Appeal Waiver Is Enforceable .................................29

  II.   Toebbe Was Properly Sentenced Under the Second Plea Agreement and the Sentencing Guidelines ........................................................31

A. Standard of Review ............................................................31

B. Legal Issues ....................................................................31

    1. Sentencing Under the Second Plea Agreement......................31

    2. The Obstruction-of-Justice Guideline ..................................35

    3. The Acceptance-of-Responsibility Guideline.......................38

III. There Was No Section 3553(a) Violation ....................................44

A. Standard of Review ............................................................44

B. Legal Principles................................................................44

C. Discussion ......................................................................45

    1. The Nature and Circumstances of the Offense ......................45

    2. The Need for the Sentence Imposed To Protect the Public from Future Crimes by Toebbe ...............................................47

    3. Sentencing Disparity ........................................................50

    4. Cumulative Error.............................................................52

IV. The Guidelines Sentence Does Not Violate the Eighth Amendment............54

A. Standard of Review ............................................................54

B. Merits.............................................................................54

Conclusion ............................................................................................56

Statement with Respect to Oral Argument ...........................................57

Certificate of Compliance ...................................................................58

Certificate of Service .........................................................................59

**Table of Citations**

**Cases**                                                                    Page

*Beckles v. United States*, 580 U.S. 256 (2017) ......................................................44

*Gall v. United States*, 552 U.S. 38 (2007) .............................................................44

*Graham v. Florida*, 560 U.S. 48 (2010) ................................................................54

█████████████████████████████████████████████████████████

*Liteky v. United States*, 510 U.S. 540 (1994) ........................................................53

*Solem v. Helm*, 463 U.S. 277 (1983) ....................................................................54

█████████████████████████████████████████████████████████

*United States v. Blick*, 408 F.3d 162 (4th Cir. 2005) ..............................................25

*United States v. Carter*, 564 F.3d 325 (4th Cir. 2009) ...........................................44

*United States v. Cobler*, 748 F.3d 570 (4th Cir. 2014) ...........................................54

*United States v. Cohen*, 888 F.3d 667 (4th Cir. 2018) ......................................24, 30

*United States v. Copeland*, 707 F.3d 522 (4th Cir. 2013) .......................................25

*United States v. DeFusco*, 949 F.2d 114 (4th Cir. 1991) ........................................34

*United States v. Francois*, 889 F.2d 1341 (4th Cir. 1989) ......................................55

*United States v. Hager*, 721 F.3d 167 (4th Cir. 2013) ...........................................53

*United States v. Juwa*, 508 F.3d 694 (2d Cir. 2007) .............................................37

*United States v. Malloy*, 568 F.3d 166 (4th Cir. 2009) ..........................................54

*United States v. Manigan*, 592 F.3d 621 (4th Cir. 2010).........................................24

*United States v. Marin*, 961 F.2d 493 (4th Cir. 1992).......................................25, 30

*United States v. McCoy*, 895 F.3d 358 (4th Cir. 2018) .......................................24

*United States v. Mendoza-Mendoza*, 597 F.3d 212 (4th Cir. 2010) .......................45

*United States v. Myers*, 280 F.3d 407 (4th Cir. 2002).........................................54

*United States v. Neal*, 101 F.3d 993 (4th Cir. 1996) .............................................53

████████████████████████████████████████

*United States v. Rivera-Santana*, 668 F.3d 95 (4th Cir. 2012)...............................50

*United States v. Said*, 798 F.3d 182 (4th Cir. 2015).................................................55

*United States v. Savage*, 885 F.3d 212 (4th Cir. 2018) .....................................31, 44

*United States v. Smiley*, 750 F. App'x 226 (4th Cir. 2019) .....................................30

*United States v. Thornsbury*, 670 F.3d 532 (4th Cir. 2012) ....................................29

*United States v. Torres-Teyer*, 322 F. Supp. 2d 359 (S.D.N.Y. 2004)....................40

*United States v. Withers*, 100 F.3d 1142 (4th Cir. 1996).........................................50

**Statutes**

18 U.S.C. § 2(a) ............................................................................................6

18 U.S.C. § 3231 ...........................................................................................1

18 U.S.C. § 3553(a) ...................................................................1, 14, 17, 23, 44

18 U.S.C. § 3553(a)(1)..................................................................45

18 U.S.C. § 3553(a)(2)(C) .........................................................48

18 U.S.C. § 3553(a)(6)................................................................50

18 U.S.C. § 3742.................................................................1, 26

28 U.S.C. § 1291 ................................................................1, 26

28 U.S.C. § 2255.....................................................................27

42 U.S.C. § 2014(y) .................................................................2, 3

42 U.S.C. § 2274(a) .............................................................2, 6, 11

**Other Authorities**

Federal Rule of Criminal Procedure 11(c)(1)(C)..............................2, 7, 9

U.S. Sentencing Guidelines Manual (U.S. Sentencing Comm'n 2021)

    U.S.S.G. § 1B1.1.................................................................44

    U.S.S.G. § 2M3.1(a)(2)....................................................7, 11, 14

    U.S.S.G. § 3B1.3.................................................................14

    U.S.S.G. § 3C1.1.................................... 1, 12, 21, 22, 34, 36, 41

    U.S.S.G. § 3E1.1.................................... 1, 12, 14, 15, 21, 22, 34, 38, 39, 40, 41

    U.S.S.G. § 5K1.1 .................................... 1, 10, 13, 15, 21, 22, 41, 42

## Statement of Jurisdiction

The district court had jurisdiction over Diana Toebbe's criminal case under 18 U.S.C. § 3231 and entered judgment on November 17, 2022.   J.A. 15.[1] Toebbe filed a timely notice of appeal on November 29, 2022.   J.A. 15.   This Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## Statement of the Issues

1.   Whether Toebbe's appeal is barred by the appeal waiver in her plea agreement.

2.   Whether the sentencing court erred in (1) applying the obstruction-of-justice enhancement in U.S.S.G. § 3C1.1; (2) declining to apply the acceptance-of-responsibility reduction in U.S.S.G. § 3E1.1; and (3) ████████████ ████████████████████████████████

3.   Whether the sentencing court erred in considering the sentencing factors set forth in 18 U.S.C. § 3553(a).

4.   Whether the sentence imposed by the district court violates the Cruel and Unusual Punishment Clause of the Eighth Amendment.

---

[1] "J.A." refers to the Joint Appendix filed by Toebbe in this case.

1

## Statement of the Case

### A.  Procedural History

Following her guilty plea in the United States District Court for the Northern District of West Virginia, Diana Toebbe was convicted of conspiracy to communicate Restricted Data, in violation of 42 U.S.C. §§ 2274(a) and 2014(y). J.A. 266.   Toebbe pleaded guilty and waived her right to appeal her conviction and sentence under Federal Rule of Criminal Procedure 11(c)(1)(C) in exchange for a sentence of imprisonment "of not more than the low end of the applicable Guidelines range."   J.A. 201.   The district court sentenced Toebbe to 262 months of imprisonment, the bottom of the applicable Guidelines range, followed by three years of supervised release.   J.A. 291.   Toebbe appeals her sentence.

### B.  Statement of Facts

#### 1.    The Offense Conduct

The Atomic Energy Act of 1954 (the "Act") prohibits communicating, transmitting, or disclosing information involving or incorporating "Restricted Data" to any individual or person, or attempting or conspiring to do so, with the intent to injure the United States or to secure an advantage to any foreign nation. *See* 42 U.S.C. § 2274(a).   Under the Act, "Restricted Data" consists of "all data concerning (1) design, manufacture, or utilization of atomic weapons; (2) the

2

production of special nuclear material; or (3) the use of special nuclear material in the production of energy." 42 U.S.C. § 2014(y). "Restricted Data" does not include data that has been declassified or removed from the Restricted Data category. *See id.*

From about April 1, 2020, through October 9, 2021, Diana Toebbe violated the Act by conspiring with her husband Jonathan Toebbe, a nuclear power engineer at the U.S. Department of the Navy, to sell Restricted Data to a foreign government for her and her husband's financial gain. J.A. 201-202. Over several years, Jonathan Toebbe stole Restricted Data from the Navy so that he could make money by selling it to a foreign government. *See* J.A. 202. Diana Toebbe knowingly and voluntarily joined her husband's scheme. J.A. 201. ████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████

In a letter dated April 1, 2020, Jonathan Toebbe sent a foreign government a sample of the Restricted Data he had stolen from the Navy. J.A. 43-45. The letter provided instructions for the foreign government to establish a covert relationship with Jonathan Toebbe so that the Toebbes could sell the foreign government additional Restricted Data. J.A. 43-45. The foreign government

3

provided the letter to the Federal Bureau of Investigation (FBI).   J.A. 45-46, J.A. 141.

The FBI initiated a covert operation.   J.A. 45-46.   Acting undercover as the foreign government, the FBI responded to Jonathan Toebbe, agreeing to establish a covert relationship with him for the purported purpose of purchasing additional Restricted Data.   J.A. 43-46, J.A. 141.   The FBI also arranged four "dead drops" with Jonathan Toebbe so that Jonathan Toebbe could covertly pass Restricted Data to the undercover FBI agents in a prearranged, concealed location.   J.A. 46-47, J.A. 70, J.A. 201-202.   During three of the four "dead drops," Diana Toebbe "provided cover and acted as a lookout for" her husband while he placed the stolen Restricted Data in the prearranged, concealed location.   J.A. 70-71, J.A. 201-202.

At the first "dead drop" location on June 26, 2021, Jonathan Toebbe left behind Restricted Data about "militarily sensitive design elements, operating parameters, and performance characteristics" of nuclear-powered warships on a secure digital or "SD" card, "which was wrapped in plastic and concealed between two slices of bread on a half of a peanut butter sandwich."   J.A. 201; *see* J.A. 47-59.   The SD card also included a message with the following statements: "'I hope your experts are very happy with the sample provided,' and 'I want our relationship to be very successful for us both.'"   J.A. 201; *see* J.A. 58.   Diana

4

Toebbe "provided cover and acted as a lookout for [Jonathan] Toebbe" on this "dead drop." J.A. 201.

At the second "dead drop" location on July 31, 2021, Jonathan Toebbe left a message, proposing "a plan for him to provide 51 packages over time in exchange for a total of $5 million paid in cryptocurrency." J.A. 201-202; *see* J.A. 59-67. "The message also included statements that the information 'was slowly and carefully collected over several years' and 'smuggled past security checkpoints a few pages at a time' and that one of the sets of information 'reflects decades of U.S. Navy lessons learned that will help keep your sailors safe.'" J.A. 202; *see* J.A. 66. Diana Toebbe again "provided cover and acted as a lookout" for Jonathan Toebbe. J.A. 66.

At the third "dead drop" location on August 28, 2021, Diana Toebbe was not present. But Jonathan Toebbe left "Restricted Data relating to militarily sensitive design elements, operating parameters, and performance characteristics" of nuclear-powered warships "on an SD card, which was concealed in a chewing gum package." J.A. 202; *see* J.A. 67-70. He also left a message stating, in part,

> "There is only one other person I know is aware of our special relationship, and I trust that person absolutely"; "I was extremely careful to gather the files I possess slowly and naturally in the routine of my job, so nobody would suspect my plan"; "I do not believe any of my former colleagues would suspect me, if there is a future

5

investigation"; and "We have cash and passports set aside for th[e] purpose" of having to flee the United States.

J.A. 202; *see* J.A. 69.   Jonathan Toebbe was referring to Diana Toebbe as the "one

other person" in the first statement.   J.A. 202.

At the fourth and final "dead drop" location on October 9, 2021, Jonathan

Toebbe left another SD card "concealed in a chewing gum package."   J.A. 202;

*see* J.A. 71-77.   Diana Toebbe "provided cover and acted as a lookout."   J.A. 202.

The Toebbes were arrested that same day, after completing this fourth "dead drop."

J.A. 77, J.A. 202.

## 2.  Indictment, Plea Agreements, and Sentencing

On October 19, 2021, Diana and Jonathan Toebbe were charged in a three-

count indictment.   Count One charged them with conspiracy to communicate

Restricted Data, in violation of 42 U.S.C. § 2274(a) and 18 U.S.C. § 2(a).   Counts

Two and Three charged them with communication of Restricted Data, in violation

of 42 U.S.C. § 2274(a).   J.A. 17-27.

### a.  First Plea Agreement and Plea and Sentencing Hearings

With the assistance of counsel, Diana Toebbe executed a plea agreement on

February 16, 2022.   J.A. 153-160.   Under the terms of the plea agreement,

Toebbe agreed to plead guilty to Count One, and she agreed that life imprisonment

6

was the statutory maximum term of imprisonment she faced by pleading guilty to

that count.   J.A. 153; *see* J.A. 190.   The parties also agreed to a specific sentence,

which would become binding on the sentencing court under Federal Rule of

Criminal Procedure 11(c)(1)(C), "of not more than 36 months of imprisonment."

J.A. 154; *see* J.A. 167.   And they agreed that if the sentencing court did not accept

this term, Toebbe could withdraw her guilty plea.   J.A. 154.   The parties further

agreed that the base offense level for calculating the Guidelines range was 37

under Section 2M3.1(a)(2) of the U.S. Sentencing Guidelines Manual (U.S.

Sentencing Comm'n 2021) ("U.S.S.G."); that the sentencing court was not bound

by this agreement concerning the base offense level; and that Toebbe could not

withdraw her guilty plea if the sentencing court rejected the parties' agreement

concerning the base offense level.   J.A. 154.   Finally, the plea agreement included

a waiver-of-appeal provision that precluded Toebbe from appealing her conviction

"on any ground whatsoever" and from appealing her sentence "for any reason,"

except for ineffective assistance of counsel or prosecutorial misconduct.   J.A. 158.

On February 18, 2022, Toebbe appeared before a magistrate judge and

pleaded guilty to Count One, pursuant to the plea agreement.   Gov't Mot. To

Dismiss, Ex. 3 at 21, Jan. 18, 2023, Fourth Circuit ECF No. 12-4 ("Feb. 2022

Tr.").   During the hearing, the magistrate judge conducted an extensive plea

7

colloquy with Toebbe.   At the outset, the magistrate judge confirmed that Toebbe was competent to proceed and understood the nature of the proceedings and the charge to which she was pleading guilty.   *Id.* at 5-23.   The magistrate judge discussed each section of the plea agreement and found that Toebbe understood the plea agreement and agreed with its terms.   *Id.* at 10-21.   The magistrate judge discussed the nature of the charge and the consequences of pleading guilty (including waiving appellate review), found that Toebbe understood them, and confirmed that Toebbe was pleading guilty voluntarily.   *Id.* at 27-40.   Then the magistrate judge accepted Toebbe's guilty plea as to Count One and deferred to the sentencing court accepting the plea agreement and sentencing Toebbe.   *Id.* at 40-41.

On August 16, 2022, the district court held a sentencing hearing.   J.A. 161-199.   At the hearing, the court also accepted the guilty plea but rejected the plea agreement on the ground that the binding term, which required the court to impose a sentence no greater than 36 months of imprisonment, was unjustifiably low when compared to the applicable Guidelines range of 151 to 188 months of imprisonment and the statutory maximum sentence of life imprisonment.   J.A. 170-171, J.A. 190-194, J.A. 266.   The court also explained that, in its view, the binding term of imprisonment did not adequately reflect the seriousness of the

8

offense, did not provide just punishment for the offense, and did not adequately

protect the public from future crimes by Toebbe.   J.A. 170-171, J.A. 190-194.

The court therefore concluded that accepting the binding term was "not in the best

interests of this community or, in fact, this country" and rejected the plea

agreement.   J.A. 194.   Toebbe then withdrew her guilty plea.[2]   J.A. 197.

### b.  Second Plea Agreement and Plea and Sentencing Hearing

With the assistance of counsel, Diana Toebbe executed a second plea

agreement on September 20, 2022.   J.A. 200-207.   The terms of this plea

agreement were largely the same, with some exceptions.   As relevant here, the

parties agreed to a sentence of imprisonment, which would become binding on the

sentencing court under Federal Rule of Criminal Procedure 11(c)(1)(C), "of not

more than the low end of the applicable Guidelines range."   J.A. 201.   The parties

agreed that their "reference to 'low end' means the lowest number of months of

imprisonment available in the applicable Guidelines range."   J.A. 201.   The

parties once again agreed that the applicable base offense level under the

---

[2] Before the August 16 sentencing hearing, Jonathan Toebbe had also pleaded guilty to Count One under a similar plea agreement with a binding sentencing range of 151-210 months of imprisonment.   *See* J.A. 167.   At the August 16 sentencing hearing, the district court rejected his plea agreement for the same reasons that it rejected Diana Toebbe's plea agreement, and Jonathan Toebbe then also withdrew his guilty plea.   J.A. 190-196.

Guidelines was 37, that the district court would not be bound by their agreement regarding the base offense level, and that Toebbe could not withdraw her guilty plea if the court did not accept their agreement regarding the base offense level. J.A. 201.   But the government agreed in the second plea agreement to ask the sentencing court, in calculating the Guidelines range, to depart downward three levels under U.S.S.G. § 5K1.1 for Toebbe's substantial assistance to authorities, if Toebbe fulfilled her obligations in the plea agreement.   J.A. 201.   The appellate-waiver provision remained the same.   *See* J.A. 158.

On September 27, 2022, Toebbe appeared before the same magistrate judge and pleaded guilty to Count One, pursuant to the second plea agreement.   Gov't Mot. To Dismiss, Ex. 4 at 22, 41, Jan. 18, 2023, Fourth Circuit ECF No. 12-5 ("Sept. 2022 Tr.").   During the hearing, the magistrate judge conducted an extensive plea colloquy with Toebbe.   As before, the magistrate judge first confirmed that Toebbe was competent to proceed and understood the nature of the proceedings and the charge to which she was pleading guilty.   *Id.* at 5-23.   The magistrate judge discussed each section of the plea agreement and found that Toebbe understood the plea agreement and agreed with its terms.   *Id.* at 10-21. The magistrate judge discussed the nature of the charge and the consequences of pleading guilty (including waiving appellate review), found that Toebbe

10

understood them, and confirmed that Toebbe was pleading guilty voluntarily.   *Id.*

at 27-40.   Following the colloquy, the magistrate judge accepted Toebbe's guilty

plea as to Count One and deferred to the district court to decide whether to accept

the plea agreement and to sentence Toebbe.   *Id.* at 41.

On November 9, 2022, the district court held a second sentencing hearing.

J.A. 223-344.   This time, the district court accepted Diana Toebbe's plea

agreement, finding that accepting this "plea agreement will not undermine the

statutory purposes of sentencing."   J.A. 266.   The court then sentenced Toebbe to

262 months of imprisonment, followed by three years of supervised release.   J.A.

291; *see* J.A. 294 (also imposing a $50,000 fine).   At the same hearing, the court

also accepted Jonathan Toebbe's agreement to plead guilty to Count One and

sentenced him to 232 months of imprisonment.   J.A. 332; *see* J.A. 335 (also

imposing a $45,700 fine).

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████



████████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

███████████████

At the sentencing hearing, the parties argued that the district court should

vary downward from the Guidelines range to impose a sentence of 36 months of

imprisonment, consistent with the original plea agreement that the district court

had rejected.   J.A. 231, J.A. 290, J.A. 295.   ████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████

The district court determined that the Guidelines range for Diana Toebbe was 262 to 327 months of imprisonment based on a total offense level of 39 and a criminal history category score of I.[3]   J.A. 267.   As detailed below, the court overruled Toebbe's objection to the obstruction-of-justice enhancement, denied the parties' motion for a downward variance, and, after considering the sentencing factors under 18 U.S.C. § 3553(a), sentenced Toebbe to the bottom of the Guidelines range at 262 months of imprisonment.[4]   J.A. 291, J.A. 295.   ███

---

[3] This Guidelines range differed from the Guidelines range calculated at the first sentencing hearing because, at the first sentencing hearing, the district court was not aware of Toebbe's letters to her husband, which led the court at the second sentencing hearing to apply the obstruction-of-justice enhancement and to reject the acceptance-of-responsibility reduction.   *See* J.A. 241-244.

[4] The court determined that Jonathan Toebbe's Guidelines range was 188 to 235 months of imprisonment, based on a total offense level of 36 and a criminal history category score of I.   The base offense level was also 37 under U.S.S.G. § 2M3.1(a)(2).   J.A. 313-314.   The court applied a two-level enhancement under U.S.S.G. § 3B1.3, finding that Jonathan Toebbe "abused a position of public trust and used a special skill in a manner that significantly facilitated the condition or concealment of the offense."   J.A. 313.   The court reduced the offense level by

███████████████████████████████████

███████████████████████████████████

██████████████████████████████████████

███████████████████████

At the sentencing hearing, the district court overruled Toebbe's objection to the obstruction-of-justice enhancement based on its finding that "encouraging a codefendant to lie to save the other codefendant's rear" is "obstruction plain and simple." J.A. 256-258. The court found that, in the letters to her husband, Diana Toebbe made "repeated references to the children" and "[t]he potential for her to care for them," tried "to guilt" her husband "to deploy the story," and "basically [told] him to lie . . . to save [her] rear." J.A. 256-257. The court found that the Toebbes' "intention . . . to establish a false narrative of plausible deniability [for] Mrs. Toebbe was plainly calculated to frustrate the investigation and prosecution of the offense of conviction" and that "Ms. Toebbe's actions to prod Mr. Toebbe to deploy their cover story while she was in jail, her attempts at correspondence, they were all taken well after the arrest and detention in this case." J.A. 256. The court therefore increased the offense level by two levels from 37 to 39.

_____

three levels under U.S.S.G. § 3E1.1 for acceptance of responsibility. J.A. 313-314.

15

Then, over the parties' objections, the district court declined to reduce the offense level for acceptance of responsibility under U.S.S.G. § 3E1.1, finding that Diana Toebbe's letters to her husband demonstrated conduct that was inconsistent with an acceptance of responsibility.   J.A. 263-265.   The court explained that the guideline's application notes supported this decision.   The court found that Application Note 1(a), which provides that "'[a] defendant who falsely denies relevant conduct that the Court determines to be true has acted in a manner inconsistent with acceptance of responsibility,'" supported the court's decision because Toebbe "falsely denied" her role in the conspiracy and encouraged her husband to falsely deny her role as well.   J.A. 263-264.   The court also explained that Application Note 1(b) requires "a voluntary termination or withdraw[al] from criminal conduct or associations" but that Toebbe "tri[ed] to fan this cover story through" her letters and knowingly "committ[ed] violations at the jail by secreting" them.   J.A. 264.   The court added that, consistent with Application Note 3, any evidence that Toebbe accepted responsibility was outweighed by her inconsistent conduct in sending the letters.   J.A. 264.   And the court noted that, under Application Note 4, conduct resulting in application of the obstruction-of-justice enhancement "'ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct.'"   J.A. 264.   Finally, the court found no

16

extraordinary circumstance that would warrant applying the adjustment despite Toebbe's obstruction.   J.A. 265.   So the offense level remained at 39.   J.A. 267.

Next the district court considered all the factors under 18 U.S.C. § 3553(a) and then sentenced Toebbe to 262 months of imprisonment, followed by three years of supervised release.   J.A. 291, J.A. 294, J.A. 303.   The court explained that it was denying the parties' motion for a downward variance to 36 months of imprisonment for the same reasons that it had rejected "the original binding plea to 36 months" of imprisonment.   J.A. 295.   As detailed below, the court based its sentence on Toebbe's role in the offense, "her personal history and characteristics, her lack of prior criminal history," her misconduct while incarcerated, and "the great impact her actions have had" on the United States' and the world's security. J.A. 302.   The court concluded that, given all these factors, its sentence met "the sentencing objectives of punishment, general deterrence, incapacitation, and rehabilitation."   J.A. 303.

The district court began its discussion of the Section 3553(a) sentencing factors by addressing the sentences of defendants in other espionage-related cases. J.A. 296-298.   The court found that the sentence in this case would not create unwarranted disparities with the sentences in those other cases because the facts and the defendants were "very different."   J.A. 296-297 (noting, for example, that

17

unlike defendant Ron Hansen—a former Defense Intelligence Agency officer who was sentenced to ten years of imprisonment after pleading guilty to attempting to communicate, deliver, or transmit national-defense information to China involving a single country—the Toebbes conspired to provide information "related to military readiness anywhere in the world where [nuclear-powered] submarines would be").   The court also observed that, in at least 21 other espionage-related cases, the defendants received sentences of life imprisonment—more than Toebbe received here.   J.A. 297.

The district court also considered any potential disparity with the sentence of her co-defendant Jonathan Toebbe.   The court explained that Diana Toebbe's sentence (262 months of imprisonment) and her husband's sentence (232 months of imprisonment) differed because Diana Toebbe, unlike her husband, obstructed justice and failed to accept responsibility under the Guidelines.   J.A. 285 ("[H]is guidelines would have been more severe or higher than hers had she not obstructed and not accept—and failed to accept responsibility.").   Because of these differences, Toebbe's Guidelines range was higher.   Her Guidelines range was 262 to 327 months of imprisonment, J.A. 267; whereas, her husband's Guidelines range was 188 to 235 months of imprisonment, J.A. 313-314.

18

The district court also found that Diana Toebbe's conduct "was very serious in nature." J.A. 298. The court observed that the seriousness of the offense was reflected in the statutory maximum penalty for the offense, which the parties agreed was life imprisonment. J.A. 298. The court also found that, as detailed in the government's victim impact statement from Navy Vice Admiral William Houston, Toebbe's conduct "posed a legitimate concern for the national security interests of this country" and "could have endangered military service personnel and compromised the security of military assets." J.A. 298, J.A. 302. The court noted that although Toebbe did not have access to the Restricted Data at the Navy's offices like her husband did, she did have access to this data after her husband stole it from the Navy and she did "participate[] directly in the distribution" of the data by providing her husband cover during three of the "dead drops." J.A. 299.

In addition, the court found that Diana Toebbe "was not a minor participant," but rather was a willing and "big" participant in the plan to commit the scheme and then to cover it up. J.A. 298, J.A. 300. The court explained that the scheme, which lasted several months, "required substantial preplanning and considerable efforts . . . to avoid detection and disruption" and that Toebbe, who was "motivated largely by greed" and "financial gain," "was positioned to benefit

19

jointly in the illicit proceeds."   J.A. 298-299.   The court further found that "it was most probably Mrs. Toebbe that was driving the bus" because "[s]he was directing the furtherance of this conspiracy through those letters that were intercepted." J.A. 299-300.   Toebbe, the court noted, directed her husband to lie by deploying the coverup story.   J.A. 299-300.

The court also considered that Toebbe "had positive family ties," had "an advanced education," "was gainfully employed," and lacked a prior criminal history.   J.A. 300, J.A. 302.

Finally, the district court considered that "there is no difference between the guideline calculations if Mrs. Toebbe had gone to trial and been convicted on all three counts and if the Court accepted the binding plea under the guideline calculations."   J.A. 301.   The court explained that it nonetheless accepted the plea agreement, and found that the sentence was appropriate, after considering several factors, including "[t]he uncertainty of obtaining a conviction at trial"; whether the government's request for a significant downward variance indicated "some defect in this case that we're unaware of"; "the costs and time of a trial to the government and the defense"; the "sentences imposed in other espionage cases"; "the potential of leaks that could come from a trial and further harm our nation's security"; the likelihood that, if Toebbe released more of the Restricted Data after serving her

sentence, the data would be "outdated, stale, and worthless to any nation who would want to cause us harm"; and Vice Admiral Houston's assessment that the plea agreement would resolve the case without any "further risks to national security."   J.A. 301-302.

### 3.    Rulings Under Review

The rulings under review are the district court's decision to apply the obstruction-of-justice enhancement under U.S.S.G. § 3C1.1; to decline to reduce the offense level for acceptance of responsibility under U.S.S.G. § 3E1.1; and █

███████████████████████████████████████████

████████████████

## Summary of Argument

1.   Toebbe's appeal is barred by the broad appeal waiver in her plea agreement.   Her appeal waiver is valid because her sentence was within the Guidelines range as determined by the district court.

2.   The district court properly sentenced Toebbe under the Guidelines.

a.   The district court did not err in applying the obstruction-of-justice guideline under U.S.S.G. § 3C1.1.   The court based its decision on its finding that Toebbe attempted to send letters to her husband, in violation of jail rules, that encouraged her husband to lie so that she might receive a lower sentence.   That finding was not clearly erroneous and does not amount to a due-process violation, given the evidence presented at sentencing supporting the finding.

b.   The district court did not err in declining to decrease Toebbe's offense level for acceptance of responsibility under U.S.S.G. § 3E1.1.   The court based its decision on its finding that Toebbe's letters to her husband demonstrated conduct that was inconsistent with a clear acceptance of responsibility as required by the Guidelines.   That finding was reasonable and within the court's discretion based on the supporting evidence presented at sentencing.

c.   ███████████████████████████

████████████████████████████████████████

22



3.    The district court properly considered the sentencing factors under 18
U.S.C. § 3553(a), including the nature and circumstances of the offense, the
parties' sentencing disparity arguments, and the need to protect the public from
future crimes by Toebbe.   The cumulative-error doctrine does not apply because
the court did not err.   And although Toebbe disagrees with the court's factual
findings and Guidelines calculation at sentencing, that disagreement is insufficient
to suggest bias warranting reassignment of the case to a different district judge.

4.    Toebbe's Guidelines sentence does not violate the Eighth Amendment's
Cruel and Unusual Punishment Clause because her sentence is not disproportionate
to her crime.   Toebbe conspired to communicate classified, national-security
information about nuclear-powered warships and, in doing so, put at risk the lives
of nearly 25,000 servicemembers and threatened the national security of the United
States.   The sentence was reasonable under the facts and circumstances of this
case.

23

**Argument**

## I.    Toebbe's Appeal Is Barred by Her Appeal Waiver

### A. Standard of Review

This Court reviews the validity of an appeal waiver de novo.   *United States v. Cohen*, 888 F.3d 667, 678 (4th Cir. 2018).   In doing so, this Court considers the totality of the circumstances, including the experience and conduct of the defendant, her educational background, and her knowledge of the plea agreement and its terms.   Generally, if a district court questions a defendant regarding the waiver of appellate rights during the Rule 11 colloquy and the record indicates that the defendant understood the full significance of the waiver, the waiver is valid. *United States v. McCoy*, 895 F.3d 358, 362 (4th Cir. 2018) (citations and internal quotation marks omitted).

### B.  Legal Principles and Discussion

A defendant may waive the right to appeal as part of a valid plea agreement. *United States v. Manigan*, 592 F.3d 621, 627 (4th Cir. 2010).   An appeal waiver in a plea agreement bars a defendant's appeal except in unusual circumstances, as when the defendant's sentence exceeds a statutory maximum, is based on race, or resulted from ineffective assistance of counsel.   *Cohen*, 888 F.3d at 683; *see* J.A. 205-206.   If a party files an appeal despite a knowing and intelligent waiver of that

24

party's right to appeal, the proper remedy is for the court of appeals to dismiss the appeal. *See United States v. Marin*, 961 F.2d 493, 496 (4th Cir. 1992) (dismissing defendant's appeal from his sentence on the ground that the defendant knowingly and voluntarily waived his right to appeal the sentence); *see also United States v. Blick*, 408 F.3d 162, 169 (4th Cir. 2005) (holding that this Court will enforce an appellate waiver if the waiver is knowing and intelligent and the issue raised on appeal falls within the waiver's scope).

This Court should dismiss Toebbe's appeal challenging her sentence because Toebbe waived her right to appeal her sentence in her second plea agreement. All the sentencing issues Toebbe seeks to raise on appeal fall within the broad scope of her appeal waiver. *See United States v. Copeland*, 707 F.3d 522, 528 (4th Cir. 2013) (This Court enforces a valid waiver so long as "the issue appealed is within the scope of the waiver."). This Court should enforce the appeal waiver because it is valid and because doing so would not constitute a miscarriage of justice.

## 1. The Appeal Waiver Is Valid

In her second plea agreement, Toebbe agreed to the following appellate

waiver:

> 17.  Ms. Toebbe is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed.   Acknowledging this, and in exchange for the concessions made by the United States in this plea agreement, the defendant waives the following rights, if the Court sentences her pursuant to [the binding term concerning the sentence of imprisonment] of this agreement:
>
> > a.  The defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the defendant's conviction on any ground whatsoever.   This includes a waiver of all rights to appeal the defendant's conviction on the ground that the statute(s) to which the defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s).
> >
> > b.  The defendant knowingly and expressly waives all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).
> >
> > c.  To challenge the conviction or the sentence which is within the maximum provided in the statute of conviction or the manner in which it was determined in any post-conviction

proceeding, including any proceeding under 28 U.S.C.
§ 2255.

Nothing in this paragraph, however, will act as a bar to the
defendant perfecting any legal remedies she may otherwise have on
appeal or collateral attack respecting claims of ineffective assistance
of counsel or prosecutorial misconduct.   The defendant agrees that
there is currently no known evidence of ineffective assistance of
counsel or prosecutorial misconduct.

The United States waives its right to appeal any sentence within
range specified in [the binding term concerning the sentence of
imprisonment].   Both parties have the right during any appeal to
argue in support of the sentence.

J.A. 205-206.

As the appeal waiver makes clear, Toebbe waived her right to appeal her

sentence "for any reason," except ineffective assistance of counsel and

prosecutorial misconduct, if the sentencing court sentenced her pursuant to the plea

agreement's binding term concerning the sentence of imprisonment.   That term

required the court to impose "a sentence of imprisonment of not more than the low

end of the applicable Guidelines range."   J.A. 201, J.A. 205-206.   It did not

require the court to accept the parties' recommendations on the "applicable

Guidelines range."   Indeed, there was no agreement between the parties in the

second plea agreement on "the applicable Guidelines range."   That determination

was left to the district court alone.   *See* Sept. 2022 Tr. 32.

27

At the second sentencing hearing, the court accepted the parties' second plea agreement, including the binding term (as well as the parties' agreement that the base offense level was 37).   J.A. 266-268.   And then the district court sentenced Toebbe pursuant to the binding term by imposing a sentence of imprisonment at the bottom of the applicable Guidelines range.   J.A. 291 (imposing a sentence of 262 months of imprisonment); *see* J.A. 303 (observing that Toebbe "entered into a plea agreement which waived in whole or in part [her] right to appeal [her] sentence").   As explained below, no unusual circumstance exists to overcome the appeal waiver's enforceability.

Toebbe's appeal waiver was knowing and intelligent.   At both guilty-plea hearings, the magistrate judge reviewed the plea agreements with Toebbe and specifically drew her attention to the waiver provision, which was the same in both plea agreements.   Feb. 2022 Tr. 33-34; Sept. 2022 Tr. 33-34.   Toebbe, who was represented by counsel and who holds a Ph.D., twice acknowledged that she had discussed this provision with her attorneys and that she understood it.   Feb. 2022 Tr. 33-36; Sept. 2022 Tr. 33-36.   Toebbe twice acknowledged that she was waiving her right to appeal her sentence "for any reason" and that the "only legal remedies on appeal or collateral attack [were] for claims of ineffective assistance of counsel or prosecutorial misconduct"—claims for which she agreed there was

28

"no known evidence." Sept. 2022 Tr. 33-36; Feb. 2022 Tr. 34-35. The magistrate judge twice found that Toebbe understood and agreed with the plea agreements' terms and "the consequences of a guilty plea" pursuant to the plea agreements, which included waiving appellate review, and then he accepted her guilty plea. Sept. 2022 Tr. 21-22, 36; Feb. 2022 Tr. 35. Because Toebbe understood the appeal waiver's significance and because her sentence was at the low end of the Guidelines range as determined by the district court, the appeal waiver is valid. *See United States v. Thornsbury*, 670 F.3d 532, 537 (4th Cir. 2012) ("Generally, if a district court questions a defendant regarding the waiver of appellate rights during the Rule 11 colloquy and the record indicates that the defendant understood the full significance of the waiver, the waiver is valid.").

### 2. The Appeal Waiver Is Enforceable

The appeal waiver is also enforceable. Although the appeal waiver permits Toebbe to appeal her sentence on ineffective-assistance or prosecutorial-misconduct grounds, Toebbe does not raise either claim here. Instead, Toebbe asks this Court to permit her appeal based on her claim that enforcing the appeal waiver would constitute a miscarriage of justice. Br. 23-28, 45-47. Toebbe's novel "miscarriage of justice" claim is misguided. Her claims are barred by the broad language of her appeal waiver.

29

As noted above, this Court has refused to enforce valid appeal waivers for a narrow class of claims, as when the sentence exceeds a statutory maximum, is based on race, or resulted from ineffective assistance of counsel. *Cohen*, 888 F.3d at 683. Toebbe argues that her claims fall within this narrow class because she alleges that the district court based its sentence on "unfounded speculation," "insert[ed] itself to a degree that violated judicial neutrality" and due process, and imposed a sentence that was beyond "the anticipated [Guidelines] range" and that violated the Eighth Amendment's prohibition on cruel and unusual punishment. Br. 20-23. But these claims amount to a simple disagreement with the district court's factual findings and Guidelines calculation at sentencing and are squarely barred by the appeal waiver, which bars Toebbe from appealing her sentence "for any reason (including the establishment of the advisory sentencing guidelines range, . . . the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment . . . .)." *See* J.A. 205-206; *see also Marin*, 961 F.2d at 496 (enforcing waiver and dismissing appeal resting on complaints of "an improper application of the guidelines"); *United States v. Smiley*, 750 F. App'x 226, 227 (4th Cir. 2019) (holding that the defendant's claims that his sentence violated the Eighth Amendment and was unreasonable "fall squarely within the scope of the valid appeal waiver"). Toebbe

30

does not cite any authority holding that this type of disagreement falls within the narrow class of claims that would render her appeal waiver unenforceable. This Court should therefore dismiss her appeal.

## II.    Toebbe Was Properly Sentenced Under the Second Plea Agreement and the Sentencing Guidelines

Even if Toebbe were entitled to raise sentencing claims despite her appeal waiver, none of those claims would warrant vacating her sentence because the district court did not err in sentencing Toebbe.

### A. Standard of Review

This Court reviews a district court's sentence under the Guidelines for reasonableness, applying an abuse-of-discretion standard. *United States v. Savage*, 885 F.3d 212, 225 (4th Cir. 2018). It reviews legal rulings de novo, and the sentencing court's factual findings for clear error. *Id.*

### B. Legal Issues

#### 1. Sentencing Under the Second Plea Agreement

First Toebbe claims that the parties did not anticipate the district court's sentence because the parties had asked the court to vary downward from the applicable Guidelines range to impose a sentence of 36 months of imprisonment. Br. 27. But the district court did not err because the court was not required to

31

impose the sentence that Toebbe, or the government, requested.   To the contrary, the district court had already rejected the binding term in the first plea agreement that would have required the court to impose a sentence no greater than 36 months of imprisonment.   J.A. 194.   And, as explained further below, the court sentenced Toebbe consistent with the binding term in the second plea agreement, which permitted the court to sentence Toebbe to a much higher term of imprisonment.

Toebbe cannot credibly claim she was unaware that the district court could impose a higher sentence.   Not only did the district court reject the binding term in the first plea agreement, but the court explained that it did so because a sentence of 36 months of imprisonment was "not in the best interests of this community or, in fact, this country."   J.A. 194.   The court explained that such a sentence was unjustifiably low when compared to the then-applicable Guidelines range of 151 to 188 months of imprisonment and the statutory maximum sentence of life imprisonment.   J.A. 170-171, J.A. 190-194, J.A. 266; *see* J.A. 153, J.A. 190 (Toebbe agreeing that life imprisonment was the statutory maximum term of imprisonment she faced by pleading guilty to Count One).   The court also explained that such a sentence would not adequately reflect the seriousness of the offense, provide just punishment for the offense, or adequately protect the public from future crimes by Toebbe.   J.A. 170-171, J.A. 190-194.   The court reiterated

32

these findings at the second sentencing hearing when it rejected the parties'
renewed request for a sentence of 36 months of imprisonment.   *See, e.g.*, J.A. 231
("[I]f I rejected the plea because it was woefully insufficient the last time around
on round one, why [does] Ms. Toebbe believe[] that I would consider a three-year
sentence at this point?"); *see also* J.A. 295 (incorporating all of the court's prior
rulings from the first sentencing hearing).

Toebbe cannot claim ignorance for the additional reason that, after the
district court rejected the first plea agreement, Toebbe withdrew her guilty plea and
entered into a second plea agreement permitting the district court to impose a much
higher sentence.   In exchange for pleading guilty and waiving her right to appeal,
Toebbe agreed to a sentence of imprisonment "of not more than the low end of the
applicable Guidelines range," meaning "the lowest number of months of
imprisonment available in the applicable Guidelines range."   J.A. 201.   During
her second guilty-plea hearing, the magistrate judge specifically called Toebbe's
attention to this term, and Toebbe affirmed that she understood it.   Sept. 2022 Tr.
17.   She also affirmed that she "agreed for the United States district judge to
determine any and all facts and to make a resolution of the application of any and
all guideline factors."   Sept. 2022 Tr. 32.   The district court's sentence, which

33

was a term of imprisonment at the bottom of the applicable Guidelines range, was

consistent with the sentence that Toebbe agreed to in the second plea agreement.

Toebbe argues that she did not expect the district court to apply the

obstruction-of-justice enhancement under U.S.S.G. § 3C1.1 or to decline to apply

the reduction for acceptance of responsibility under U.S.S.G. § 3E1.1.   Even if

true, any such lack of advance notice would not amount to error.   *See United*

*States v. DeFusco*, 949 F.2d 114, 118-19 (4th Cir. 1991) (explaining that there is

no requirement that the court determine and inform the defendant of the applicable

Guidelines range before accepting the guilty plea).   ███████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

Also, as Toebbe acknowledges (Br. 27), neither the first nor the second plea

agreement required the court to apply the Guidelines in a particular way or

specified the applicable Guidelines range.   The district court was free to make its

own factual findings and Guidelines calculation at sentencing.

Toebbe also suggests that her sentence was unfair because the district court

sentenced her as though she had gone to trial.   Br. 45-47.   But again, the court

sentenced Toebbe consistent with the terms Toebbe agreed to in the second plea

agreement.   The court also squarely considered that "there is no difference between the guideline calculations if Mrs. Toebbe had gone to trial and been convicted on all three counts and if the Court accepted the binding plea under the guideline calculations."   J.A. 301.   The court explained that it nonetheless accepted the second plea agreement, and found that the sentence was appropriate, after considering several factors, including "[t]he uncertainty of obtaining a conviction at trial"; whether the government's request for a significant downward variance indicated "some defect in this case that we're unaware of"; "the costs and time of a trial to the government and the defense"; the "sentences imposed in other espionage cases"; "the potential of leaks that could come from a trial and further harm our nation's security"; the likelihood that, if Toebbe released more of the Restricted Data after serving her sentence, the data would be "outdated, stale, and worthless to any nation who would want to cause us harm"; and Navy Vice Admiral William Houston's assessment that the plea agreement would resolve the case without any "further risks to national security."   J.A. 301-302.   Given all these factors that the court properly considered, the district court did not err.

### 2.  The Obstruction-of-Justice Guideline

Toebbe is also incorrect (Br. 27-28) that the district court's Guidelines calculation, particularly its decision to apply the obstruction-of-justice

enhancement, is "unfounded" and reflects the court's alleged bias.   Section 3C1.1

provides for a two-level increase in the offense level

> [i]f (1) the defendant willfully obstructed or impeded, or attempted to
> obstruct or impede, the administration of justice with respect to the
> investigation, prosecution, or sentencing of the instant offense of
> conviction, and (2) the obstructive conduct related to (A) the
> defendant's offense of conviction and any relevant conduct; or (B) a
> closely related offense.

U.S.S.G. § 3C1.1.   At the second sentencing hearing, the district court applied the

enhancement based on its finding that Toebbe attempted to send letters to her

husband, in violation of jail rules, that encouraged her husband to lie so that she

might avoid criminal liability.   J.A. 256-258 ("[E]ncouraging a codefendant to lie

to save the other codefendant's rear" is "obstruction plain and simple.").   That

finding is not clearly erroneous and does not amount to a due-process violation,

given the evidence presented at the second sentencing hearing.

At the second sentencing hearing, the district court read Toebbe's letters into

the record.   The district court noted that, in those letters, Toebbe encouraged her

husband to lie to authorities, including the court, "to save [her] rear."   J.A. 237-

239, J.A. 256-257.   Toebbe made "repeated references to the children" and "[t]he

potential for her to care for them" if she avoided further jail time; directed her

husband to tell the court that she did not know anything about the Restricted Data

36

but believed they were actually selling "a bitcoin algorithm that was going to make [them] millions"; said she would "rot" in prison unless he pleaded guilty, deployed the bitcoin cover story, and told the court she "didn't know anything about any of this"; and said that if he did not do it for her, he should at least do it for their sons so that they could be raised by one of their parents.   J.A. 237-241, J.A. 256-257. Toebbe also told her husband to destroy the letters after reading them and gave him instructions explaining how to get correspondence to her without it being intercepted by jail staff.   J.A. 237.

While Toebbe claims that due process requires information used for sentencing to be accurate, she fails to establish that the information the district court relied on at sentencing was inaccurate.   *See* Br. 35 (citing *United States v. Juwa*, 508 F.3d 694 (2d Cir. 2007) (holding that when a court relies on materially inaccurate factual information in applying the Guidelines, the factual error may constitute a due process violation)).   To the contrary, Toebbe's counsel did not dispute that Toebbe wrote these letters.   Rather, her counsel admitted that the bitcoin scheme was "no question" a "preconceived, preplanned cover" story that Toebbe knew was false.   J.A. 245-248, J.A. 251-253; *see* J.A. 248 (noting that Toebbe did not dispute that the cover story was planned "to purposely protect Mrs.

37

Toebbe in the event they were both captured so that there would be someone remaining to take care of their children").

Toebbe nonetheless objected to the obstruction-of-justice enhancement based on her claim that the enhancement was meant to target conduct that was calculated to thwart a criminal investigation or prosecution.   According to Toebbe, her conduct could not have been calculated to achieve this purpose because she planned the cover story *before* her arrest, not after.   J.A. 246-247.   But the district court's decision to overrule Toebbe's objection was not error.   As the court explained, the letters "impact the prosecution . . . because they had this plan to obstruct that would have put the government off the trail of Mrs. Toebbe and totally on the trail of Mr. Toebbe in the investigation and perhaps even in preparation for the trial."   J.A. 255-256.   That finding was not clearly erroneous given Toebbe's letters encouraging her husband to falsely tell authorities that she was ignorant of their criminal scheme.   *See* J.A. 256-257.

### 3.  The Acceptance-of-Responsibility Guideline

Toebbe also challenges the district court's decision declining to decrease her offense level for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and (b). Br. 42-44.   Section 3E1.1(a) provides for a two-level decrease in the offense level "[i]f the defendant clearly demonstrates acceptance of responsibility for his

38

offense." U.S.S.G. § 3E1.1(a). Section 3E1.1(b) provides, in relevant part, for an additional one-level decrease upon the government's motion "[i]f the defendant qualifies for a decrease under subsection (a)." U.S.S.G. § 3E1.1(b).

As Toebbe notes (Br. 42), both parties asked the district court to apply both subsections of the guideline. But the district court's decision declining to reduce the offense level for acceptance of responsibility under U.S.S.G. § 3E1.1(a), based on its finding that Toebbe's letters to her husband demonstrated conduct that was inconsistent with a clear acceptance of responsibility, was reasonable and within its discretion. J.A. 263-265. And because Toebbe did not qualify for a decrease under subsection (a), the district court correctly concluded that she also did not qualify for a decrease under subsection (b). J.A. 265.

The district court's decision was reasonable for the additional justification that, as the district court explained at sentencing, its decision was consistent with the guideline's application notes. The court explained that Application Note 1(a), which provides that "'[a] defendant who falsely denies relevant conduct that the Court determines to be true has acted in a manner inconsistent with acceptance of responsibility,'" supported the court's decision because Toebbe "falsely denied" her role in the conspiracy and encouraged her husband to falsely deny her role as well. J.A. 263-264. The court also explained that Application Note 1(b) requires

39

"a voluntary termination or withdraw[al] from criminal conduct or associations,"

but that Toebbe "tri[ed] to fan this cover story through" her letters and knowingly

"committ[ed] violations at the jail by secreting" them.    J.A. 264.    The court added

that, consistent with Application Note 3, any evidence that Toebbe accepted

responsibility was outweighed by her inconsistent conduct in sending the letters.

J.A. 264.    And the court noted that, under Application Note 4, conduct resulting in

application of the obstruction-of-justice enhancement "'ordinarily indicates that the

defendant has not accepted responsibility for his criminal conduct.'"    J.A. 264.

Toebbe argues that "[c]ourts have rejected th[e] faulty notion" that "if a

defendant ever, at any point, attempts to obstruct justice, he can never accept

responsibility for his conduct for the purposes of the guidelines."    Br. 43 (citing,

*e.g.*, *United States v. Torres-Teyer*, 322 F. Supp. 2d 359, 368 (S.D.N.Y. 2004)).

But Toebbe's argument misconstrues the district court's ruling.    The court did not

purport to adopt a categorical rule barring application of the acceptance-of-

responsibility guideline in cases where there is also evidence of obstruction.

Rather, the court correctly explained that although U.S.S.G. § 3E1.1 provides for a

two- or three-level decrease in the defendant's offense level "if the defendant

clearly demonstrates acceptance of responsibility for his offense," the Application

Notes instruct that conduct amounting to an obstruction of justice under Section

40

3C1.1 ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. J.A. 264. As the court also correctly recognized, "[t]here may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply." U.S.S.G. § 3E1.1, cmt. n.4; *see* J.A. 265. And, as the court found in this case, no such extraordinary circumstances existed here. J.A. 265. Because Toebbe fails to demonstrate that the district court's finding of no extraordinary circumstances was erroneous, her challenge to the court's acceptance-of-responsibility ruling fails.

41





███████████████████████████

███████████████████████████

███████████████████████████

███████████

### III.    There Was No Section 3553(a) Violation

### A. Standard of Review

This Court reviews a district court's sentence for reasonableness, applying an abuse-of-discretion standard.   *Savage*, 885 F.3d at 225.   It reviews legal rulings de novo and the sentencing court's factual findings for clear error.   *Id.*

### B. Legal Principles

Under U.S.S.G. § 1B1.1, a sentencing court must properly calculate the defendant's Guidelines range, consider any departures under the Guidelines, and then evaluate the statutory sentencing factors under 18 U.S.C. § 3553(a).   The sentencing court must make an "individualized assessment" based on the facts presented.   *Beckles v. United States*, 580 U.S. 256, 265 (2017) (citing *Gall v. United States*, 552 U.S. 38, 49-50 (2007)); *United States v. Carter*, 564 F.3d 325, 328 (4th Cir. 2009).   This Court reviews the transcript as a whole and does not engage in appellate flyspecking of a sentencing court's rulings.   *United States v. Mendoza-Mendoza*, 597 F.3d 212, 218 (4th Cir. 2010).

44

### C. Discussion

#### 1. The Nature and Circumstances of the Offense

In assessing Toebbe's sentence, the district court properly considered the nature and circumstances of the offense under 18 U.S.C. § 3553(a)(1).   The court discussed the seriousness of, and Toebbe's role in, the offense.   *See* J.A. 298-301. Regarding her role, the court found that Toebbe "was not a minor participant," but rather was a willing and "big" participant in the plan to commit the scheme and then to cover it up.   J.A. 298, J.A. 300.   The court explained that the scheme, which lasted several months, "required substantial preplanning and considerable efforts . . . to avoid detection and disruption" and that Toebbe, who was "motivated largely by greed" and "financial gain," "was positioned to benefit jointly in the illicit proceeds."   J.A. 298-299.   The court further found that "it was most probably Ms. Toebbe that was driving the bus."   J.A. 299-300; *see* J.A. 248-250.

Toebbe argues that the district court erred in basing its sentence in part on its finding that Toebbe was likely "'driving the bus.'"   Br. 36 (quoting J.A. 299). Although the parties characterized Toebbe's role in the conspiracy as a mere "lookout" for her husband during the "dead drops," it was not clear error for the court to find that Toebbe played a more important role.   As the court explained, Toebbe "was directing the furtherance of this conspiracy through those letters that

45

were intercepted." J.A. 299-300. In those letters, Toebbe directed her husband to lie to authorities, including the court, by deploying the cover story that she was ignorant of the criminal scheme and that her husband alone was responsible. J.A. 299. Her husband "did not direct [her] in any way to write these letters" and, according to his counsel, apparently did not try to send any letters to Toebbe. J.A. 249. Although Toebbe claims (Br. 36-37) that due process requires sentencing based on reliable evidence, Toebbe did not dispute that she wrote those letters. *See* J.A. 245-248, J.A. 251-253.

The government presented additional undisputed evidence at the detention hearing that supported the district court's finding at sentencing that Toebbe was "driving the bus."[6] *See* J.A. 149-150. From April 2020 through October 2021, Toebbe and her husband exchanged text messages about fleeing the country, referring to "Plan A" and "Plan B." J.A. 149. In those messages, Jonathan Toebbe expressed his reservations about Plan A, but Diana Toebbe reassured him, saying she had "no problems at all with it" and "fe[lt] no loyalty to abstractions."

---

[6] This evidence was before the district court. The magistrate judge held the detention hearing and entered the order detaining Toebbe. Toebbe did not appeal from that order but later moved to reopen her detention hearing. The magistrate judge denied the motion, and Toebbe appealed from that decision, which put the evidence before the district court. The district court affirmed the magistrate judge's decision. J.A. 147-148, J.A. 152.

J.A. 84.   Apparently convinced by his wife, Jonathan Toebbe agreed to "check[]
on [Plan] A now."   J.A. 85.   A few days later, Jonathan Toebbe told Diana
Toebbe that although they could flee to a foreign country, he would not be able to
make as much money as he could in the United States because his "engineering
degree is basically worthless overseas."   J.A. 85.   Diana Toebbe reassured him
again, saying that she "cannot believe that the two of [them] wouldn't be
welcomed and rewarded by a foreign government."   J.A. 85.   Then several
months later, Diana Toebbe told her husband that they "need to be actively making
plans to leave the country."   J.A. 85.   These messages, which were admitted into
the record "without objection," further support the district court's finding at
sentencing that Diana Toebbe was "driving the bus" in the criminal scheme.   *See*
J.A. 150.

### 2.   The Need for the Sentence Imposed To Protect the Public from Future Crimes by Toebbe

During the second sentencing hearing, the district court asked the parties to
reassure the court that the Toebbes did not have a "Plan C"—that the Toebbes did
not hide Restricted Data, unrecovered by the authorities, that they could sell when
they are released from prison.   J.A. 274.   The parties represented to the court that
they were not aware of any evidence suggesting that the Toebbes had such a plan.

47

*See* J.A. 275, J.A. 287-288.   In later explaining the basis for its sentence, the court said that it had considered, among numerous other factors, "the time and distance between the sentence imposed today and the time the defendant would potentially be able to distribute any information she or her husband held onto when she was released from incarceration."   J.A. 301.

Contrary to Toebbe's claim (Br. 35-36), the district court did not err in considering the potential for future crimes by Toebbe, as required by 18 U.S.C. § 3553(a)(2)(C).   The court did not find as a matter of fact that the Toebbes held onto Restricted Data that they later planned to distribute.   Rather, the court fashioned a sentence to ensure that, "by the time [Toebbe] is released from imprisonment, any information she has would most certainly be outdated, stale, and worthless to any nation who would want to cause us harm."   J.A. 301.   It was reasonable for the court to do so, given the seriousness of the offense, Toebbe's willingness to trade her country's national security for her own financial gain, her continued misconduct after her arrest, and her willingness to lie (and to encourage her husband to lie) to authorities.   *See* J.A. 142 (magistrate judge granting government motion to detain Toebbe pending trial, finding in part that Toebbe "is a danger to every community and to our national security by clear and convincing evidence").

48

In particular, Toebbe's actions presented a real and serious threat to national security.   According to Vice Admiral Houston, the Restricted Data that the Toebbes conspired to sell to a foreign government included "some of the most secure and sensitive information about [the U.S.] nuclear-powered fleet."   J.A. 192.   In his victim-impact statement, Vice Admiral Houston detailed how the Toebbes' conduct irreparably compromised "[a] critical component of national defense," thereby "undercutting the military advantage afforded by decades of research and development" and "pos[ing] a very real and profound threat to national security allowing our adversaries access to one of our prized strategic advantages."   J.A. 192-194.   He explained that "the betrayal by the Toebbes has had far-reaching consequences," not only for the United States as a whole, but also for nearly 25,000 sailors whose lives were placed at greater risk by the Toebbes. J.A. 302.   Toebbe did not dispute Vice Admiral Houston's assessment.   *See* J.A. 278 (Toebbe's counsel stating he "certainly do[es not] disagree with [Vice Admiral Houston]").   Under these circumstances, where national security and servicemembers' lives are at stake, it was appropriate, if not necessary, for the court to ensure that its sentence protected the public from any further crimes by Toebbe.

49

### 3. Sentencing Disparity

Toebbe is incorrect that the district court ignored sentencing disparities

under Section 3553(a)(6), including the alleged disparity between her and her

husband's sentences.   Br. 44-45.   As explained below, the court made an

individualized assessment of Toebbe's case before sentencing her and explicitly

considered the sentences of her husband and defendants in other espionage-related

cases.   To the extent Toebbe argues that her sentence is substantively

unreasonable, she is also incorrect because the district court did not err in

concluding that the sentence created no unwarranted disparities with the sentences

of similarly situated defendants.

As a threshold matter, Section 3553(a)(6) is aimed at eliminating national

sentencing disparities, not disparities between co-defendants.   *United States v.

Withers*, 100 F.3d 1142, 1149 (4th Cir. 1996).   Although a district court may

consider the defendant's sentence in relation to the sentences of her co-defendants,

a comparison of sentences may be treacherous because a sentencing proceeding is

necessarily individualized and because defendants often have different levels of

culpability and criminal histories.   *United States v. Rivera-Santana*, 668 F.3d 95,

105-06 (4th Cir. 2012); *see* J.A. 295-298 (explaining that the district court

50

conducted an individualized assessment of each defendant's case before sentencing them).

The need for an individualized assessment is demonstrated by this case. The court explained that Toebbe's sentence (262 months of imprisonment) and her husband's sentence (232 months of imprisonment) differed because Toebbe, unlike her husband, obstructed justice and failed to accept responsibility under the Guidelines.   J.A. 285 ("[H]is guidelines would have been more severe or higher than hers had she not obstructed and not accept[ed]—and failed to accept responsibility.").   Because of these differences, Toebbe's Guidelines range was higher.   Her Guidelines range was 262 to 327 months of imprisonment, J.A. 267, while her husband's Guidelines range was 188 to 235 months of imprisonment, J.A. 313-314.   Toebbe was sentenced to the bottom of her Guidelines range, and her husband was sentenced near the top of his Guidelines range.

The court also discussed the potential disparities between Toebbe's sentence and the sentences of defendants in other espionage-related cases.   *See*, *e.g.*, J.A. 231-232, J.A. 279-282, J.A. 284-290, J.A. 296-298; *see also* J.A. 174, J.A. 181-190.   The court found that Toebbe's sentence would not create unwarranted disparities with the sentences in those cases because the facts and the defendants were "very different" from this case.   J.A. 296-297.   For example, the court noted

that unlike defendant Ron Hansen—a former Defense Intelligence Agency officer who was sentenced to ten years of imprisonment after pleading guilty to attempting to communicate, deliver, or transmit to China national-defense information involving a single country—Toebbe conspired to provide information "related to military readiness anywhere in the world where [nuclear-powered] submarines would be."   J.A. 296-297.   The court also observed that, in at least 21 other espionage-related cases, the defendants received sentences of life imprisonment— longer than the sentence Toebbe received here.   J.A. 297.   The district court therefore properly considered the need to avoid unwarranted sentencing disparities among similarly situated defendants.   Although Toebbe disagrees with the court's assessment, the district court did not err, much less clearly err or abuse its discretion.

### 4.  Cumulative Error

Toebbe argues that the district court's sentencing errors were cumulative and that this Court should reassign the case to a different judge on remand because the district court judge is biased.   Br. 47-49.   Both arguments are meritless.

First, under the cumulative-error doctrine, the cumulative effect of two or more individually harmless errors might have the potential to prejudice the defendant to the same extent as a single reversible error.   *United States v. Hager*,

721 F.3d 167, 203-04 (4th Cir. 2013).   But, as discussed above, the district court

did not err.   So the cumulative error doctrine does not apply.

Second, Toebbe provides no sound basis for reassigning this case to a

different district judge, even if there were a basis for a remand.   When this Court

remands a case, it may reassign the case to a different judge when "the appearance

of fairness and impartiality is best advanced by reassignment."   *United States v.*

*Neal*, 101 F.3d 993, 1000 n.5 (4th Cir. 1996).   Although Toebbe strongly

disagrees with the district court's factual findings and its Guidelines calculation at

her sentencing, her disagreement with those decisions, unaccompanied by any

evidence of extra-judicial bias, is insufficient to suggest disqualification.   *See*

*Liteky v. United States*, 510 U.S. 540, 555 (1994) (noting that "judicial rulings

alone almost never constitute a valid basis for a bias or partiality motion").   The

court's decisions were reasonable under the facts and circumstances of this case

and were within the court's discretion.   Accordingly, this Court should deny

Toebbe's reassignment request as well.

53

**IV.   The Guidelines Sentence Does Not Violate the Eighth Amendment**

**A.   Standard of Review**

This Court reviews a defendant's challenge to her sentence on Eighth

Amendment grounds de novo.   *United States v. Malloy*, 568 F.3d 166, 180 (4th

Cir. 2009) (citing *United States v. Myers*, 280 F.3d 407, 416 (4th Cir. 2002)).

**B.  Merits**

The Eighth Amendment forbids cruel and unusual punishments and

implicitly requires that a criminal sentence be proportionate to the crime or crimes

of conviction.   *Solem v. Helm*, 463 U.S. 277, 284 (1983).   In evaluating such a

claim, this Court first must determine whether "a threshold comparison of the

gravity of [the defendant's] offenses and the severity of his sentence leads [the

Court] to infer that his sentence is grossly disproportionate to his crimes."   *United

States v. Cobler*, 748 F.3d 570, 579-80 (4th Cir. 2014).   In the "rare case" that a

defendant establishes this inference, "the [C]ourt should then compare the

defendant's sentence with the sentences received by other offenders in the same

jurisdiction and with the sentences imposed for the same crime in other

jurisdictions."   *Graham v. Florida*, 560 U.S. 48, 60 (2010).   If a defendant fails to

satisfy the threshold question, this Court need not move on to the next step in the

Eighth Amendment analysis. *See United States v. Said*, 798 F.3d 182, 200 (4th Cir. 2015).

Toebbe has not shown that her Guidelines sentence raises an inference of gross disproportionality, and therefore she has failed to satisfy the threshold question in the Eighth Amendment analysis. Toebbe's sentence was not disproportionate to her crime of conspiracy to communicate classified, national-security information that included "some of the most secure and sensitive information about" U.S. nuclear warships. *See* J.A. 192. As the district court found, her offense was extremely serious, putting at risk the lives of nearly 25,000 servicemembers and "pos[ing] a very real and profound threat to [the] national security" of the United States. J.A. 192-193, J.A. 302. Also, Toebbe's sentence of 262 months of imprisonment was below the statutory maximum sentence of life imprisonment. *See United States v. Francois*, 889 F.2d 1341, 1343 (4th Cir. 1989) (finding that sentence within range provided by Guidelines did not violate Eighth Amendment); *see also Said*, 798 F.3d at 199 (finding that the mandatory life sentence required by 18 U.S.C. § 1651 "reflects the rational legislative judgment, entitled to deference, that piracy . . . deserv[es] [] one of the harshest penalties") (internal quotation marks omitted). These circumstances do not give

55

rise to an inference that the sentence was grossly disproportionate.   As a result,

Toebbe's sentence does not violate the Eighth Amendment.

### Conclusion

This Court should dismiss Toebbe's appeal.   Otherwise, this Court should

affirm the judgment of the district court.

<div style="margin-left: 50%;">Respectfully submitted,</div>

William J. Ihlenfeld, II                Matthew G. Olsen
United States Attorney              Assistant Attorney General
                                    for National Security


Jarod J. Douglas                    Danielle S. Tarin
Assistant United States Attorney    Appellate Attorney
United States Attorney's Office     U.S. Department of Justice
P.O. Box 591                        National Security Division
Wheeling, WV 26003                  950 Pennsylvania Ave., N.W.
(304) 234-0100                      Washington, DC 20530
                                    (202) 532-4493

*Attorneys for the United States of America*

**Statement with Respect to Oral Argument**

The United States respectfully suggests that oral argument is not necessary in this case.   The legal issues are not novel, and oral argument likely would not aid the Court in reaching its decision.

## Certificate of Compliance

1.    This brief has been prepared using Microsoft Word, Times New Roman, 14 Point.

2.    Exclusive of the corporate disclosure statement; table of contents; table of citations; statement with respect to oral argument; any addendum containing statutes, rules, or regulations; and the certificate of service, the brief contains 12,016 words.

**Certificate of Service**

I hereby certify that on June 15, 2023, I electronically filed the foregoing

Corrected Brief of the United States with the Clerk of Court using the CM/ECF

System, which will send notice of such filing to the registered CM/ECF users listed

below.   I further certify that, on June 15, 2023, I served the Sealed version of the

foregoing Corrected Brief of the United States via FedEx on the CM/ECF users

listed below.


Jessica N. Carmichael
Carmichael Ellis & Brock, PLLC

Barry P. Beck
Power, Beck & Matzureff

Attorneys for Diana Toebbe


_____//s//_____
Danielle S. Tarin
Attorney for the United States

59